# SMITH v. DISTRICT OF COLUMBIA.*


AGENCY; MUNICIPAL CORPORATIONS; CONSTRUCTIVE NOTICE; PROXIMATE CAUSE; NEGLIGENCE.

1. An act of Congress charging the commissioners of the District of Columbia with the duty of approving and supervising the construction of a street railway incorporated under the act, creates no liability upon the District of Columbia as a municipality, and the commissioners in discharging their duty under the statute will act as agents or representatives, not of the municipality, but of Congress. (Following *McGraw* v. *District of Columbia*, 3 App. D. C. 408, 25 L. R. A. 691.)

2. In a doubtful case where negligence is charged against a municipality,

─────────

*See *Smith* v. *Georgetown & T. R. Co. ante*, 259.

Statement of the Case.

a recovery ought not to be allowed, but it is only where there is a plain and obvious neglect of duty on the part of the municipal agents that liability can arise. (Following *District of Columbia* v. *Moulton,* 15 App. D. C. 374.)

3. Where a passenger on a street railway car of the Great Falls & Tennallytown Railway Company, whose elbow was struck by a passing car was thereby thrown to the ground and killed, and an action was brought by his administratrix against the District of Columbia, in which it was charged that the District was liable on the ground that the commissioners of the District were charged by the acts of Congress of August 10, 1888, and March 24, 1890 incorporating and amending the charter of that company, with the duty of approving and supervising the construction of the company's tracks, and the testimony showed that the accident resulted from the large size of the cars and the closeness of the tracks,—it was *held* that (1) the commissioners were guilty of no neglect of duty in permitting the use of the large cars, as the act conferred upon them no control thereover; and that (2) there being no proof of any previous accident by reason of the proximity of the tracks or the size of the cars, there was no constructive notice to them of any probable danger at the point where the accident occurred; and (3) that the proximate cause of the accident was not the closeness of the track or the size of the cars, as it could have been avoided had the railway company exercised ordinary care in the movement of its cars at that point; it being its duty to bring one of the cars to a full stop or to slow it down while the other passed.

No. 1413.  Submitted December 8, 1904.  Decided April 11, 1905.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia on a verdict directed by the court, in an action by an administratrix to recover damages for the alleged negligent killing of her intestate.

*Affirmed.*

The COURT in the opinion stated the case as follows:

This case is before the court on appeal from a final judgment of the court below, in a suit at law brought under the statute by the appellant, Elizabeth B. Smith, as administratrix of the estate of Peter A. Smith to recover compensation for the death

of the latter claimed to have resulted from an alleged omission of duty by the District of Columbia.

On the 1st of July, 1901, about 9 o'clock in the evening, the appellant's intestate was a passenger upon a north-bound car of the Georgetown & Tennallytown Railway Company, and was seated upon the rear seat of the car, on the west side thereof, with his elbow resting upon the west guard-rail, when the car passed another car going in the opposite direction. While the cars were passing there was a swaying motion which caused them to almost touch one another, and the upright posts or other portions of the south-bound car struck the elbow of the deceased, dragging him over said guard-rail, between the cars, and throwing him upon the street, causing injuries which resulted in his immediate death. The testimony further showed that the distance between the inner rails of the tracks at the point of the accident was 3 feet and 7 inches, and that from the time of the construction of the tracks until about six or eight months prior to the accident small cars were used thereon, but about six or eight months before the accident these cars were replaced by larger cars, which in passing each other at this point came within a distance of 2½ inches of touching. And the appellant thereupon offered in evidence, and they were received without objection, the acts of Congress under which said railway company was incorporated and the construction of the railway authorized.

At the conclusion of the testimony on behalf of the appellant, the District of Columbia, by its counsel, moved the court to instruct the jury to return a verdict in its favor on the ground that no case had been made out against it. The motion was granted, a verdict rendered in accordance with the instructions, and judgment entered upon the verdict. From this judgment the present appeal has been prosecuted.

*Messrs. Douglass & Douglass* and *Mr. Levi H. David* for the appellant.

*Mr. Andrew B. Duvall,* Corporation Counsel, and *Mr. E. H. Thomas,* Assistant, for the appellee.

Mr. Justice ANDERSON, of the Supreme Court of the District of Columbia, who sat with the court in the absence of Mr. Chief Justice ALVEY, delivered the opinion of the Court:

It is contended on behalf of the appellant that the District is, and was at the time of the accident, a body corporate and municipal, and had the power, and it was its duty, both under the general law and under the special acts incorporating the railway company, through its commissioners, to regulate the manner of the construction and maintenance of the railway tracks in the streets of the city and the selection and operation of the cars used thereon, and that because of default in the performance of such duty the municipality is liable in damages for the injuries resulting in the death of appellant's intestate.

The act of Congress approved August 10, 1888, under which the railway company was incorporated, authorized it "to construct and lay down a single or double track railway, with necessary switches, turn-outs, and other mechanical devices for operating the same by cable or electric power, for carrying passengers in the District of Columbia from the Potomac river, near High street, to and along High street, in Georgetown, to the Tennallytown road, but wholly outside the limits of said road; and along the side of the said road to the District line; also the privilege of laying such conduits beneath the surface of Water street for the purpose of conveying or communicating power from any suitable point along said Water street to said High street, as may be found necessary, and subject to the approval of the commissioners of the District of Columbia. * * * Said railway shall be constructed of good materials and in a substantial manner, with rails of the most approved patterns, the gage to correspond with that of other city railroads, all to be approved by the commissioners of the District of Columbia. * * * It shall also be lawful for said corporation, its successors, or assigns to erect and maintain at such convenient and suitable points along the line as may seem most desirable to the board of directors of said corporation, and subject to the approval of the commissioners of the District, an engine house or houses, boiler

house, and other buildings necessary for the successful operation of such cable or electric road. * * * The said company shall place first-class cars on said railway, with all modern improvements, for the convenience and comfort of passengers, and shall run cars thereon as often as the public convenience may require, and according to a published schedule to be filed with the District commissioners and be approved by them. * * * Said company shall have at all times the free and uninterrupted use of the railway."

And by act of Congress, approved March 24, 1890, the charter of this railway company was amended, "by substituting after the words, 'and along High street, in Georgetown, to the Tennallytown road,' the words 'and thence along and in said roads,' for the words 'but wholly outside of the limits of said road and along the side of said way.' Provided, That the inner line of rails shall be at the minimum distance of 8 feet from the center of the improved roadway. And provided further, That said railway shall be located on such side of the roadway as may be indicated by the commissioners of the District of Columbia."

It will be noted that this grant of the railway company was not a municipal, but a private congressional, grant. The municipality had no voice in granting the privilege thereby conferred upon the railway company, and was equally impotent to restrain or terminate their enjoyment. No express duty was thereby imposed upon the municipality, and certainly none can be implied. Congress, having sole power to bestow this grant, had like power to nominate its own agents, subject to whose approval said railway was to be constructed. And therefore it was that Congress designated the commissioners of the District of Columbia as such agent, charged, not with a duty that was mandatory, but with one that involved the exercise of judgment and discretion. It was plainly not a ministerial but a judicial function imposed upon the commissioners as individuals, and not as the official representatives and agents of the municipality.

As was said by the Supreme Court of the United States in the case of *District of Columbia* v. *Bailey*, 171 U. S. 176, 43

L. ed. 126, 18 Sup. Ct. Rep. 868: "The sum of the municipal powers of the District of Columbia is neither vested in nor exercised by the District commissioners. They are, on the contrary, vested in the Congress of the United States acting *pro hac vice* as the legislative body of the District, and the commissioners of the District discharge the functions of administrative officials."

Congress has repeatedly conferred similar authority upon other Federal officials in respect of private grants of franchises in the District of Columbia. For instance, Congress provided that the construction of the Washington & Georgetown Railroad, the Columbia Railroad, and the Metropolitan Railroad, should in each case be approved by the Secretary of the Interior. Again, in 1892 the Metropolitan Railroad was required to repair its bridge across Rock Creek in accordance with plans and specifications prepared by the engineer commissioner of the District of Columbia and under his direction.

Since it is manifest that no municipal obligation was created by the acts of Congress just referred to, in which the Secretary of the Interior and the engineer commissioner were, respectively, designated agents of Congress in supervising and approving the construction of the railways and bridge work therein provided for, upon what principle can it be said that the case at bar is differentiated from those just cited on the grounds that the agents designated by Congress in the act under consideration chance to be the commissioners of the District of Columbia? It is manifest from the language of the acts of Congress already quoted that the authority therein given was not to the municipality, but rather a superadded obligation laid upon the commissioners as the chosen agents or representatives of Congress.

In *McGraw* v. *District of Columbia*, 3 App. D. C. 408, 25 L. R. A. 691, this court said: "And even if it should be assumed that there was a duty imposed by it [the act of Congress] from which a liability might accrue, it is not at all clear that the District of Columbia is chargeable with that duty which was laid by express terms, not on the District as a municipality,

but upon the commissioners of the District as a superadded obligation."

Again, in the case of *District of Columbia* v. *Moulton,* 15 App. D. C. 374, this court said: "In a doubtful case the recovery ought not to pass against the municipality. It is only where there is a plain and obvious neglect of duty on the part of the *municipal agents* that liability can arise in such a case as the present."

So in the case at bar it cannot be said that the commissioners were guilty of a neglect of duty, much less the District of Columbia, in permitting the use of these larger cars, when the act itself conferred upon them no control thereover. A careful reading of the act of Congress approved August 10, 1888, above quoted, shows that, while the construction of the railway tracks, with the necessary switches, etc., the laying of conduits, as therein provided, and the erection and maintenance of an engine house or houses, boiler house, and other buildings necessary for the successful operation of such cable or electric road, were subject to the approval of the District commissioners, they were given no control over or authority to approve or disapprove the cars to be placed upon the tracks, the language of the act in this respect being: "Said company shall place first-class cars on said railway, with all modern improvements for the convenience and comfort of passengers," and the only authority conferred upon them by the act as to the operation of the road when completed being to approve the company time schedule, as thus expressed in the act, "and it (the railway company) shall run cars thereon as often as the public convenience may require. And according to the published schedule to be filed with the District commissioners and be approved by them."

It is to be further observed that not only is there no proof whatever of any other accident previously occurring by reason of the proximity of the tracks or the running of the larger cars, and not only was there no notice, express or constructive, to either the commissioners or the municipality, of any probable or threatened danger at the place of accident, but it is quite clear that neither the closeness of the tracks nor the size of the cars

operated upon the tracks constituted the proximate cause of the accident, for the reason that such accident could, and would, have been avoided had the railway company exercised ordinary and proper care in controlling the movement of its cars at that point. One of the cars could have been brought to a full stop while the other passed over that part of the tracks, or the movement of the cars slowed down, or other reasonable precautionary measures taken, so as to safeguard the passengers from accident, and it was the duty of the railway company to take such precautionary measures. The closeness of the tracks and the size of the cars operated thereupon constituted mere conditions, and not causes. The efficient cause producing the injury was manifestly either the decedent's own negligence or the negligence of the railway company.

Finding no error in the judgment below, it must be affirmed, with costs, and it is so ordered. *Affirmed.*