## PARSONS *v.* DISTRICT OF COLUMBIA.

MUNICIPAL CORPORATIONS; DISTRICT OF COLUMBIA; MUNICIPAL BUILDINGS; CONTRACTS; ACTIONS.

1. The provision of the act of Congress of June 11, 1878 (20 Stat. at L. 102, chap. 180), creating the present form of government of the District of Columbia, limiting the power of the commissioners to make contracts binding the District to contracts involving $100 and under, unless such contracts are reduced to writing and recorded in a book kept for that purpose and signed by all of the commissioners, does not

apply to a contract relating to a municipal matter, authorized by subsequent act of Congress to be made by a special agency created for the purpose. (Distinguishing *United States ex rel. Daly* v. *Macfarland,* 28 App. D. C. 552.)

2. A contract with a building contractor made by the Secretary of the Treasury and the District commissioners, as a municipal commission, under the act of Congress of June 6, 1902 (32 Stat. at L. 321, chap. 1036), as amended by act of March 3, 1903 (32 Stat. at L. 1206, chap. 1011), authorizing the Secretary to purchase land to be owned by the District, and the Secretary and the commissioners, acting jointly, to contract for the erection thereon of a municipal building, to be constructed under the supervision of an officer of the Federal government, to be appointed by the President, one half of the cost of the land and building, not to exceed $2,000,000, to be paid out of the revenues of the District, and the other half by the United States,—is binding upon the District as a municipality; and the District is liable in damages to the contractor, if it commits a breach of the contract by failing to furnish him with stone for the building as required by the contract within the time stipulated in it, even though the recovery of such damages may make the cost of the land and building exceed the sum appropriated. (Distinguishing *McGraw* v. *District of Columbia,* 3 App. D. C. 405, 25 L.R.A. 691.)

3. When a municipal corporation has been held liable for damages resulting from the negligence or breach of contract by a third party, it has a remedy over against such party, unless it has concurred in the wrong, whether he has been notified to appear and defend, or not.

No. 2123. Submitted April 21, 1910. Decided May 26, 1910.

HEARING on an appeal by the plaintiff from a judgment of the Supreme Court of the District of Columbia sustaining a demurrer to a declaration in an action for damages for breach of contract, and, the plaintiff electing not to amend, dismissing the cause.                                             *Reversed.*

The COURT in the opinion stated the facts as follows:

This suit was brought by the appellant, James L. Parsons, in the supreme court of the District of Columbia for damages arising from a breach of a contract alleged to have been entered into by the Secretary of the Treasury of the United States and

the commissioners of the District of Columbia, for and on behalf of the appellee, for the construction of what is known as the municipal building for the District of Columbia.

It appears that in 1902 Congress passed an act (32 Stat. at L. 321, chap. 1036), authorizing the Secretary of the Treasury to purchase square 255 in the city of Washington, and providing for the erection thereon of the building in question. The act, among other things, provided that "when the Secretary of the Treasury shall have completed the purchase of said site, he and the commissioners of the District of Columbia, acting jointly, shall proceed at once to contract for the erection and completion thereon of a fireproof building for the accommodation of the municipal and other offices of the District of Columbia, the total cost of said building, including cost of site, not to exceed $1,500,000, one half of which shall be chargeable to the revenues of the District of Columbia, and the other half to be paid out of any money in the Treasury of the United States not otherwise appropriated." The act further provided that the supervision of the construction of the building should be placed in charge of an officer of the government, to be appointed by the President of the United States.

In the general omnibus building bill of March 3, 1903 (32 Stat. at L. 1206, chap. 1011), being "An Act To Increase the Limit of Cost of Certain Public Buildings, To Authorize the Purchase of Sites for Public Buildings, To Authorize the Erection and Completion of Public Buildings, and for Other Purposes," it was provided as follows: "Municipal building, Washington, District of Columbia, from $1,500,000 to $2,000,-000, one half of which shall be chargeable to the revenues of the District of Columbia, and the other half to be paid out of any money in the Treasury of the United States not otherwise appropriated, and the title to the site heretofore acquired for said municipal building is hereby transferred from the government of the United States to the District of Columbia: Provided, that nothing in this section contained shall be held to repeal or modify the provisions of 'An Act To Increase the Limit of Cost of Certain Public Buildings, To Authorize the Purchase

of Sites for Public Buildings, to Authorize the Erection and Completion of Public Buildings, and for Other Purposes,' approved June 6th, 1902, so far as the said act provides that the Secretary of the Treasury and the commissioners of the District of Columbia shall act jointly in contracting for erecting and completing a building for the accommodation of the municipal and other offices in the District of Columbia."

It is alleged by plaintiff in his declaration that, on July 29, 1905, he entered into a contract with Leslie M. Shaw, then Secretary of the Treasury, and Henry B. F. Macfarland, Henry L. West, and John Biddle, then commissioners of the District of Columbia, acting jointly under the name of the "Municipal Building Commission." Under the terms of the contract, as alleged in the declaration, "for the consideration of $854,300, the plaintiff agreed to furnish all the labor and materials, except the foundation, which had already been put in, and the face, or cut stone, which was to be furnished or caused to be furnished, by the District of Columbia, acting through the said Municipal Building Commission, and to erect and finally complete on or before November 1, 1907, a building for the use and accommodation of the municipal offices of the District of Columbia, according to certain plans and specifications annexed to said contract, on a lot or square (to wit, square numbered 255) in the city of Washington, in the District of Columbia, belonging to the District of Columbia, and as to which lot or square the United States had no title nor interest in regard to the same, except to see to the application of money appropriated by the Congress of the United States to pay for the erection of said building. And plaintiff says that by the terms of said contract he was to be paid the sum of $854,300 in monthly instalments, based on estimates approved by the supervisor of construction named in said contract, as work on said building progressed, less 10 per cent of said contract price, which was not to be paid until after said building was finally completed and accepted by said District of Columbia, acting through said Municipal Building Commission; and plaintiff further says that the District of Columbia, acting through said Municipal

Building Commission, agreed to furnish, or cause to be furnished, to the plaintiff all the face or cut stone required by said building within sixteen months from April 12, 1905, the same to be delivered at the site of said building as follows: All stone for basement and sub-basement stories in four months; all stone for first story in six months; all stone for second story in eight months; all stone for fourth story within thirteen months; and all remaining stone within sixteen months; and that the District of Columbia, acting through said Municipal Building Commission, would promptly deliver, or cause to be delivered, to the plaintiff the said face or cut stone as above stipulated; and in the order required by said building, he entered upon the performance of said work and prosecuted the same diligently, and finally completed the same on or about the 1st day of July, 1908, and the same is now being used for its municipal and other offices, by the said District of Columbia." Plaintiff then alleges a breach of the contract on the part of the Municipal Building Commission in its failure to furnish the face or cut stone required for said building within the time stipulated in the contract, and alleges damage, as shown by bill of particulars, to the amount of $15,000.

We have quoted at length from the declaration, for the reason that the cause comes here from a judgment on demurrer to the declaration, and a copy of the contract does not appear in the record. The demurrer and the points noted for argument under the rule are as follows:

"The defendant says that the amended declaration, filed herein, is bad in substance.

"Note.—Among the points to be argued are:

"1. The only contract sued upon is one between the United States and the plaintiff, to which the District of Columbia is not a party.

"2. If the contract sued upon be one between the plaintiff on the one part, and the United States and the District of Columbia acting jointly as party of the other part, the United States has not been joined in the suit as a party, and the District of Columbia cannot be sued alone.

"3. There is no authority in law for the District of Columbia to enter into any such contract, either alone or in conjunction with the United States; and if the contract be such a one, it is void in law.

"4. The District of Columbia had no authority to act as alleged, or otherwise, through such building commission, nor to do any act relating to the construction of the municipal building."

*Mr. Sidney T. Thomas* and *Mr. John Ridout* for the appellant.

*Mr. Edward H. Thomas,* Corporation Counsel, for the appellee:

1. The municipal corporation known as the District of Columbia, and its officers, the commissioners of the District of Columbia, have no authority to enter into a contract to acquire title to the land, or to erect a public building thereon. *Stoutenburgh* v. *Hennick,* 129 U. S. 141; *District of Columbia* v. *Bailey,* 171 U. S. 176. The District of Columbia has no legislative power. *Kerr* v. *Ross,* 5 App. D. C. 241; *Daly* v. *Macfarland,* 28 App. D. C. 552; *District of Columbia* v. *Bailey,* 171 U. S. 161, 175, 176.

2. The District of Columbia being a municipal corporation of limited powers, and the commissioners not being the municipality, but being mere administrative agents of the municipality, in the absence of express statutory or necessarily implied indispensable authority, it is clear that the District of Columbia could not contract to erect the municipal building. *United States ex rel. Daly* v. *Macfarland,* 28 App. D. C. p. 558; 20 Stat. at L. 103, chap. 180; *Myers* v. *District of Columbia,* 25 App. D. C., pp. 135, 136.

It is fundamental that everyone dealing with a public agent is bound to know the extent of the authority of such agent.

3. Congress has by special act created the agency to enter into the contract to erect the municipal building, and it has

not imposed that duty on the District of Columbia. If Congress had imposed the duty of erecting the building on the commissioners of the District of Columbia alone, it would not have followed that the duty was imposed on that municipality. *Barnes* v. *District of Columbia,* 91 U. S. 550; 1 Dill. Mun. Corp. 3d ed. pp. 28, 29.

4. Congress has not, however, referred the erection of the municipal building to the District of Columbia by virtue of its right to impose superadded duties on the executive officers alone, but has exercised its right to directly appoint a joint commission to erect the municipal building on land to be acquired by the Federal government, through its agent, the Secretary of the Treasury. *District of Columbia* v. *Coale,* 30 App. D. C. pp. 145–146; *Shoemaker* v. *United States,* 147 U. S. pp. 282–300; *Brown* v. *District of Columbia,* 29 App. D. C. 273.

5. When Congress has, by direct appointment of officers, or by imposing superadded duties on the commissioners of the District of Columbia, undertaken management of matters concerning the District of Columbia, such duties are not municipal duties, and no authority is given the municipality, and it is not liable for anything done by such agents. *McGraw* v. *District of Columbia,* 3 App. D. C. 405; *Smith* v. *District of Columbia,* 25 App. D. C. 375–376; *Fay* v. *Macfarland,* 32 App. D. C. 295, 299; *Metropolitan R. Co.* v. *District of Columbia,* 132 U. S. 1, 7.

6. The acts of June 6, 1902, and March 3, 1903, deal with the erection of public buildings for the United States; and Congress was careful to direct the purchase or condemnation of the land therein, and if by condemnation, then, under the act providing a site for the enlargement of the government printing office (26 Stat. at L. chap. 837), Congress, in order that no implication should arise that the land was to be acquired for the District of Columbia, seems to have purposely ignored the provisions of sec. 483 of the Code of the District of Columbia.

The supervision of the construction of the building was placed in charge of an officer of the government of the United States, and the Secretary of the Treasury and the commission-

ers of the District of Columbia, acting jointly, were to enter into the contract. A municipal building was to be erected "for the joint use of the United States and the District of Columbia;" and, of course, Congress has still the right to say to what use the building shall be put, and devest the title of the District to the property. It may organize a new municipal corporation. It was proper that the agents selected to make the contract should be those who were familiar with the necessities of such a building. The agents of the United States were therefore advisedly selected. And when the amendatory act was passed transferring title to the District of Columbia, in order that no liability should be imposed on the District of Columbia it was expressly provided "that nothing in this section contained shall be held to repeal or modify the provisions of 'An Act To Increase the Limit of Cost of Certain Public Buildings, To Authorize the Purchase of Sites for Public Buildings, To Authorize the Erection and Completion of Public Buildings, and for Other Purposes,' approved June 6th, 1902, so far as the said act provides that the Secretary of the Treasury and the commissioners of the District of Columbia shall act jointly in contracting for, erecting, and completing a building for the accommodation of the municipal and other offices in the District of Columbia."

Application of the principles of law heretofore cited, to these statutes, discloses an absence of "express statutory authority" (*District of Columbia* v. *Bailey,* 171 U. S. 161, 176), or "express words" (*U. S. ex rel. Daly* v. *Macfarland,* 28 App. D. C. 558), or clear language, which is necessary in order to impose municipal rights and duties in reference to the contract.

The cases cited heretofore also show conclusively that the duties imposed were superadded duties, and not those contemplated by the laws governing the municipal corporation.

7. The allegation in the amended declaration, that the commissioners of the District of Columbia were in fact acting for and on behalf of the District of Columbia only, although professing to act on behalf of the United States and the District of Columbia, is contrary to the statute mentioned in the decla-

ration, and so is every other allegation charging the contract
to have been made by the District of Columbia.

The effect of the statute cannot be changed by a pleading.
*Louisville & N. R. Co.* v. *Palmer,* 109 U. S. 252, 253.

If the court holds that the District officials have entered into
the contract without charter power, attention is invited to the
following authorities in other jurisdictions, which sustain the
proposition that it incurred no liability by such unauthorized
act of its officers: *Switzer* v. *Harrisonburg* (Va.) 52 S. E. 174,
2 L.R.A.(N.S.) 910; *Bell* v. *Kirkland,* 13 L.R.A.(N.S.) 796.

There are numerous cases where contracts have been held
void and insufficient, even when executed, to create an estoppel
against the city, where they were in violation of express pro-
hibitions, such as those against the creation of indebtedness be-
yond a specified amount.  As illustration merely of this class
of cases is a decision denying a contractor for the building of
a court house any compensation for extra work, where this cre-
ated an excess of the cost over the amount which the people
had voted, and the law allowed such an expense only when it
was voted. *King* v. *Mahaska County,* 75 Iowa, 329. So, a con-
tract employing a school teacher who lacked the necessary legal
qualifications was held void, and a warrant for the teacher's
compensation was held to be without consideration. *Goose
River Bank* v. *Willow Lake School Twp.* 1 N. D. 26.  And
where contracts are required by statute to be let to the lowest
bidder, no compensation can be recovered for extra work, or
any work done under such a contract which is not so let. *Mc-
Brian* v. *Grand Rapids,* 56 Mich. 95; *McDonald* v. *New York,*
68 N. Y. 23, 23 Am. Rep. 144; *Parr* v. *Greenbush,* 72 N. Y.
463; *Dickinson* v. *Poughkeepsie,* 75 N. Y. 65; *Smith* v. *New-
burg,* 77 N. Y. 136.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

It is clear that this is not a contract of the District, executed
on its behalf by the commissioners acting under general au-
thority vested in them for that purpose.  In the act of Congress

of June 11, 1878 [20 Stat. at L. 106, chap. 180, § 5], creating
a permanent form of government for the District of Columbia,
the commissioners are limited in their power to make contracts
on behalf of the District as follows: "All contracts for the
construction, improvement, alteration, or repairs of the streets,
avenues, highways, alleys, gutters, sewers,. and all work of like
nature, shall be made and entered into only by and with the
official unanimous consent of the commissioners of the District;
and all contracts shall be copied in a book kept for that purpose,
and be signed by the said commissioners; and no contract in-
volving an expenditure of more than $100 shall be valid until
recorded and signed as aforesaid."

Construing this authority, the court in *District of Columbia*
v. *Bailey,* 171 U. S. 161, 176, 43 L. ed. 118, 125, 18 Sup. Ct.
Rep. 868, said: "Recurring to the statutes relating to the com-
missioners of the District of Columbia, it is clear from their
face that these officers are without general power to contract
debts, or to adjust and pay the same; that, on the contrary, the
statutes expressly deprive them of such power, and limit the
scope of their authority to the mere execution of contracts pre-
viously sanctioned by Congress, or which they are authorized
to make by express statutory authority. The necessary opera-
tion of these provisions of the statutes is to cause the District
commissioners to be merely administrative officers, with min-
isterial powers only. * * * By the express terms of the
statute the commissioners are forbidden to enter into any con-
tract binding the District for the payment of any sum of money
in excess of $100, unless the same is reduced to writing, and
is recorded in a book to be kept for that purpose, and signed by
all the commissioners, the statute declaring, in express terms,
that no contract shall be valid unless recorded as aforesaid.
This mandatory provision of the statute clearly makes the form
in which a contract is embodied of the essence of the contract.
In other words, by virtue of the restrictions and inhibitions of
the statute, a contract calling for an expenditure in excess of
$100 cannot take effect unless made in the form stated. The

form, therefore, becomes a matter of fundamental right, and illustrates the application of the maxim *Forma dat esse rei.*"

It is therefore insisted by counsel for the District that, if the commissioners attempted to bind the District to a contract beyond the limitations of the statute, or in any other manner than as therein provided, such action would be void. This would undoubtedly be true, were it not that they were acting under express authority of Congress. It is well settled that a municipal corporation possesses only those powers, first, "granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the declared objects and purposes of the corporation,—not simply convenient, but indispensable." *United States ex rel. Daly* v. *Macfarland,* 28 App. D. C. 552. This is a clear expression of the inherent power of the municipality to act through its officers. But counsel overlook the fact that Congress, having general plenary power to legislate for the District, may by special act create an agency to contract for the municipality in a particular matter, and bind it to a fulfilment of that contract. The limitations placed upon the commissioners, and the necessity of recording contracts made in the exercise of their general powers, would not attach to such a contract. We think that is just where this case turns. A special agency was created by Congress to enter into a contract for the erection of the building in question. The contract was made either on behalf of the United States or the District of Columbia. Congress had full power to create the agency for either purpose, and we must look to the terms of the acts to ascertain for whom the commission was in fact acting.

It will be found by reference to the acts of Congress construed together,—and they must be so considered,—that before the contract in question was made, the title to the property had passed to the District; and it is specifically stated that the building shall be "for the accommodation of the municipal and other offices of the District of Columbia." It also appears from the allegations of the petition, which are admitted by the demurrer, that the contract was made upon the theory and under-

standing that the building was being erected for the District. We think from the language of the statutes there is no escape from this conclusion. This case is not analogous to that of the government acquiring title to land in a State, and jurisdiction over the same by cession from the State, for the purpose of erecting thereon a building to be used exclusively for governmental purposes. Here Congress acts as a legislature for the District of Columbia. It provides by statute for public improvements within the District, and not only regulates their use, but the manner in which the expense shall be paid. In this instance, the act provided for the payment in the usual manner in which District obligations are paid,—one half by the government and one half out of the revenues of the District. This provision as to payment is in accordance with the law under which the revenues of the District are acquired and disbursed in conducting its affairs.

While, therefore, we think there is no escape from the conclusion that this building was constructed for the District, and that the municipal commission in making the contract in question acted on behalf of the District, we are confronted with the more serious proposition of the extent of the power of the commission to obligate the District. It is clear that the commissioners of the District of Columbia, acting in conjunction with the Secretary of the Treasury, were not exercising the general powers conferred upon them as commissioners to contract on behalf of the District. It is insisted that, inasmuch as this contract involved the expenditure of more than $100, and was not recorded in a book kept for that purpose, in which such contracts are required by law to be recorded, the action is not binding upon the District. As we have suggested, the commissioners were here acting as special agents appointed by Congress, in conjunction with the Secretary of the Treasury, to make this contract. Congress could have named any other agency, whose action would have had the same force and effect as that of the municipal commission. The action of either, so long as it proceeded within the strict letter of the acts of Congress delegating the authority and directing the action to

be taken, would be legal and binding upon the District of Columbia. But it also follows that the power of this agency is limited and defined by the strict terms of the acts conferring it. The duty imposed upon the District commissioners was not a part of their general official duties, but an extra-official, superadded duty imposed upon them for the purpose of contracting for the erection of this building, and no other.

In *McGraw* v. *District of Columbia,* 3 App. D. C. 405, 25 L.R.A. 691, the court, considering the liability of the District for damages caused by the erection of a swimming pool by the commissioners of the District, under a special act of Congress, said: "It may well be doubted whether the act of Congress that has been cited in this case was intended to impose any duty upon the District of Columbia, such as is sought to be enforced in the present suit. The act is permissive in its character, and not mandatory. It is not mandatory, either upon the Secretary of War, to permit the use of the public grounds for the purpose in question, or upon the commissioners of the District of Columbia, to carry the purpose into effect. And even if it should be assumed that there was a duty imposed by it, from which a liability might accrue, it is not at all clear that the District of Columbia is chargeable with that duty, which was laid by express terms, not on the District as a municipality, but upon the commissioners of the District as a superadded obligation." But in that case, as in a number of others cited by counsel for the District, the improvement was constructed by the commissioners, by permission of Congress, on land belonging to the United States. On this point we think these cases turn, and are distinguishable from the case at bar. The mere fact of a special agency being created to make the contract, and of Congress directing that supervision of the work should be by an officer appointed by the President, does not affect the question of liability. These are only details of administration over which Congress has full control. The building was still being erected for the District of Columbia. The same power that created the office of commissioner and placed upon its incumbents certain limited administrative functions, can enlarge those

powers in a particular case, and direct their action on behalf of the District, either as commissioners, or as individuals, in connection with others, constituting a special commission. While, as suggested, this commission is strictly limited in its action to those powers clearly conferred by the acts of Congress, yet the Acts must be given a liberal construction, in order to effect the evident intent of Congress.

It is insisted that the municipal commission was limited to making a single contract, because, by the terms of the act of Congress, it was only authorized to contract for the erection of this building. The word "contract," as there used in the singular, relates to the power conferred upon the commission, and not to the number of instruments it might be necessary to execute in order to accomplish the end authorized. We think the commission was authorized to make one or more contracts as it deemed advisable, so long as, through the various contracts made, the purpose of the acts—the erection of the building within the amount appropriated for that purpose—was accomplished.

This brings us to the crucial question in this case. The powers of the commission being limited to contracting for the erection of this building for a certain fixed amount of money, could it, either by additional contract, or by a provision in a contract, indirectly obligate the District to pay a greater sum than that appropriated for the purpose? It is contended that this would be the practical effect were we to hold that the District is liable in this action. We do not so regard it.

The absurdity of this contention becomes apparent when it is remembered that every contract of importance entered into by the commissioners on behalf of the District of Columbia is for the expenditure of a specific appropriation, the full amount of which is usually embraced in the original contract or contracts. Followed, therefore, to its final analysis, the position of counsel would lead to a declaration that in no instance, except where a portion of the fund specifically appropriated remained available, would the District be liable for damages for the breach of a contract. The claim here is not based upon a

contract in excess of the amount appropriated, but is in the nature of damages for a breach of the contract by one of the contracting parties. The provision in appellant's contract requiring the District, through this commission, to deliver the stone within a specified time, was a reasonable and proper one. If the commission was dependent upon another contractor to furnish the stone, good administration would have called for a bond indemnifying the District against loss. If such precaution was not taken, the loss becomes one which municipalities, as well as the government itself, are sometimes called upon to suffer through the delinquencies of its officers and agents. In the absence of such precaution, however, the District is not estopped from recovering from the stone contractor, should it be held. liable in the present suit. It is well settled that, when a municipal corporation has been held liable for damages resulting from the negligence or breach of a third party, it has a remedy over against such party, unless the corporation has concurred in the wrong. *Chicago* v. *Robbins*, 2 Black, 418, 17 L. ed. 298. In the case at bar the party contracting to furnish the stone, through whose apparent delay the alleged damage has been sustained, might have been notified to appear and defend in the present suit. Such notice, however, is not necessary to create a liability, and, if he has knowledge of the pendency of the present action, he will be concluded by a judgment recovered against the District, resulting from his negligence and delay in furnishing the stone according to the terms of his contract, unless, as we have suggested, his action was concurred in by the District, or he was not in fact obligated in such manner as to render him liable.

There was nothing sacred about the particular fund appropriated to erect this building. It came into the District treasury as do other revenues. It was used as revenue is generally used, for the purposes for which it was so raised. If there has been a default on the part of the District, it will have to be made up out of its treasury, which derives its resources from the same source as that from which this particular fund came.

We are of opinion that the so-called municipal commission

contracted for work to be done for the District of Columbia, and, if any breach occurred in the contract by which the appellant was damaged, a cause of action exists. The judgment is reversed, with costs, and the cause remanded, with instructions to proceed in accordance with this opinion.          *Reversed.*