## DISTRICT OF COLUMBIA *v.* BAILEY.

## BAILEY *v.* DISTRICT OF COLUMBIA.

ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

Nos. 390, 420. Submitted January 10, 1898. — Decided May 31, 1898.

The commissioners of the District of Columbia have no power to agree to a common law submission of a claim against the District.

On July 30, 1879, a contract for resurfacing with asphaltum certain streets in the city of Washington was awarded to

The Bailey-French Paving Company. The agreement was embodied in a writing signed on the one part by Davis W. Bailey as general agent of the company just named, and on the other part signed and sealed by the Commissioners of the District of Columbia. The price specified for the work aggregated a little less than $41,000. On February 12, 1880, when about three fourths of the work to be done under this contract had been completed and about $36,000 earned therefor, including $5784.14 allowed for extra work, the Commissioners notified Bailey that no more work could be performed under the contract, because of the fact that the appropriation made by Congress for the work in question was exhausted. Subsequently, on February 24, 1883, Davis W. Bailey, claiming that he was in fact The Bailey-French Paving Company, instituted an action at law in the Supreme Court of the District of Columbia against the District of Columbia to recover $25,000 as damages, averred to have been sustained by the cessation of the work under the contract. The District, on April 4, 1883, filed pleas, claiming a set-off of $1312.30 for damages alleged to have been sustained by improper performance of the work of resurfacing; averring the termination of the contract by reason of the appropriation having been exhausted; and alleging that the time within which the contractor had stipulated to complete the work had expired long prior to the cancellation of the contract. The plaintiff joined issue and filed a replication on April 18, 1883.

On June 19, 1883, Bailey died. His widow was appointed administratrix, and the action against the District was revived in her name.

On September 16, 1891, the attorney for the claimant addressed a letter, on behalf of the administratrix, to the Commissioners of the District of Columbia, calling attention to the pending case, stating that "the ground of said suit is for breach of contract," reciting the facts as to the making of the contract and the mode by which it was terminated, and claiming that, at the time of such cancellation, Bailey had expended for machinery necessary to the performance of the contract $10,180; that he had at the time stock on hand,

$7000; that the profit on the unexecuted balance of the work would have been $8000; that there was due under the contract for an extra one half inch of surfacing $5000. These items were stated in the letter to amount to $31,180, but only aggregate $30,180. Without calling the attention of the Commissioners to the fact that the item of five thousand dollars for an extra half inch of resurfacing was not asserted in the declaration in the pending suit, the attorney for the administratrix proceeded to refer to the defences interposed in such suit on behalf of the District, and next stated the claim made by the contractor in his replication, that the delay in the work was the fault of the District. The conclusion of the letter, omitting references to immaterial matters, was as follows:

"Now, having stated the principal facts which bear upon this case, that you may have sufficient knowledge to act in the premises, I write to ask if you will appoint some good man as a referee or arbitrator to whom this case may be referred, with power to hear the evidence and make an award which shall be accepted, whether for or against us, as a final settlement of this long and much litigated case."

This communication was referred by the Commissioners to the attorney for the District, who endorsed thereon under date of October 17, 1891:

"This is a case which has been pending in the court for a long time and it ought to be disposed of. If it could be referred to some first-class referee, who will give us a full hearing, it would be a very good way of disposing of it, and I should favor such a reference, as we can then attend to it at our convenience."

A memorandum was also sent by one of the Commissioners to the assistant attorney for the District, which read as follows:

"THOMAS: Think of some good names for a referee, and talk with us about this case.

"October 27, 1891.                          J. W. D."

A memorandum in pencil, evidently having reference to the foregoing, is as follows:

"Ans. Mr. Douglass. Comm'rs think this case should be settled in court."

On October 28, 1891, Assistant Attorney Thomas sent the following letter:

"To the Hon. Commissioners, etc., etc.:

"GENTLEMEN: I return to you herewith a communication from W. Preston Williamson, Esq., relative to the case of *Bailey* v. *The District of Columbia*, referred to me with the request that I give you the name of some one who would make a good referee.

"I would suggest either Mr. A. B. Duvall or Mr. J. H. Lichliter, both members of the bar and well qualified to decide the issues in that case.

"Very respectfully,

"S. T. THOMAS, *Ass't Att'y D.C.*"

The next document referring to the matter is the following:

"OFFICE OF THE
"COMMISSIONERS OF THE DISTRICT OF COLUMBIA,
"WASHINGTON, *January* 11, 1892.

"Ordered, that J. J. Johnson is hereby appointed referee in the matter of the suit of *Bailey, Administratix of Bailey, deceased,* v. *District of Columbia.*

"Official copy furnished Mr. J. J. Johnson.

"By order: W. TINDALL, *Secretary.*"

Under this appointment, on February 17, 1892, the attorneys for the respective parties appeared before Mr. Johnson. It was claimed by witnesses for the plaintiff at the trial of the action subsequently brought to enforce the finding of the referee, that at the commencement of the hearing the latter gentleman, as well as the attorney for the administratrix, raised the question whether or not under the order of appointment the decision of the referee was to be final, and were assured by the attorney for the District that the decision of Mr. Johnson was to be a final determination of the case.

Such witnesses also testified that subsequently, when a question arose with respect to permitting an amended declaration to be filed, setting up a claim for an extra half inch of resurfacing, the referee and attorneys discussed as to whether the decision of the referee " was to wind up finally the whole matter," and an affirmative conclusion was arrived at. No attempt, however, was made to obtain from the Commissioners of the District any modification or amplification of the writing of January 11, 1892.

The hearing before the referee was concluded on July 18, 1892, when Mr. Johnson placed on the files of 'the Supreme Court of the District 'of Columbia in action numbered 24,279 his report as referee. The report did not refer to the mode by which its author had become referee. It was entitled in the cause, purported to contain a synopsis of the pleadings, the plaintiff's claim, a statement of the facts and the findings of " J. J. Johnson, referee." The report concluded as follows :

" Upon the evidence and the law I have allowed the plaintiff for the unexecuted balance of 11,385 square yards, $4440.15, being the profit between the cost of resurfacing the streets at fifty cents per square yard and eighty-nine cents, the price received, and for the extra one half inch I have allowed the plaintiff $6079.05, at the contract price, aggregating the sum of $10,519.20. I do therefore find that there is due to the plaintiff from the defendant the sum of $10,519.20, besides costs."

The referee also fixed his fee at $550, which was paid by the administratrix.

On September 23, 1892, exceptions were filed on behalf of the District to this report. Upon the exceptions, the attorney for the plaintiff made the following endorsement : " I consent that these exceptions be filed *nunc pro tunc.*" On March 10, 1893, a motion for judgment was filed on behalf of the plaintiff.

Without action being had on the exceptions and motions referred to, the administratrix of Bailey, on August 8, 1893, instituted an action at law, numbered 34,564, in the Supreme

Court of the District of Columbia, seeking to recover from the District the sum of $10,519.20, basing the right to such recovery upon the claim that the finding of Mr. Johnson was, in fact, a final decision and award. In the affidavit filed with the declaration, as authorized by the rules of practice of the court, what purports to be a copy of the resolution appointing Mr. Johnson referee is set out, but the words "of the suit" are omitted from before the words "of Bailey, administratrix." On September 2, 1893, pleas were filed on behalf of the District, denying that it had agreed to submit the matters of difference referred to in the declaration to the award and arbitrament of Johnson, and averring that Johnson had not made an award concerning the same. The various steps in the original action (No. 24,279) were stated, and it was alleged that motions to set aside said award and for judgment were still pending. It was also averred that the alleged award was not under seal and was never delivered to the defendant; that the defendant never undertook and promised in the manner and form as alleged, and that the District was not indebted as alleged. The plaintiff joined issue. On October 8, 1895, on motion of the plaintiff, the two causes were consolidated. While the motion to consolidate was opposed by the District, no exception was taken to the entry of the order of consolidation.

The consolidated action came on for trial January 13, 1896. At the trial W. Preston Williamson, a witness for the plaintiff, testified that he had sent to the Commissioners the communication of September 16, 1891. Under objection and exception he was permitted to testify to conversations had separately with two of the Commissioners, which tended to show that in the event of the appointment of an arbitrator or referee, it was the intention of the Commissioners to submit to the individual selected as referee or arbitrator the final determination of the entire controversy referred to in Williamson's letter. Also under objection and exception, the witness testified that after the order appointing Mr. Johnson referee was made by the Commissioners, he and the attorney for the District, in the presence of the referee, discussed the scope of

the submission, and agreed that the decision of the referee was intended by the parties to the controversy to be a final disposition of the whole matter. The indorsements on the letter of Mr. Williamson, the letter of the assistant attorney of the District, and other memoranda heretofore set out were put in evidence on behalf of the plaintiff. Mr. Hazleton, a former attorney for the District, also testified for the plaintiff, in substance, under objection and exception, that it was the intention of the Commissioners, as he knew from oral statements made to him by two of the Commissioners, that the appointment of a referee would be for the purpose of ending the whole controversy, and that nothing occurred between the time of the appointment of the referee and the making of the report to change that understanding. He also testified as to the filing of the amended declaration before the referee, setting up the claim for an extra half inch of resurfacing, which was not embraced in the pending suit at the time the referee or arbitrator was appointed.

J. J. Johnson also testified on behalf of the plaintiff, under objection and exception, as to the understanding had with him at the hearing before him as referee, by the counsel for the respective parties, regarding the finality of any decision made by him, and as to the filing of the amended declaration for the extra half inch of resurfacing. He testified that he filed the report made by him in court of his own motion, and averred that certain written matter filed with his report was not a part of the report, and that it did not contain all the evidence, though it contained all the oral testimony given before him.

The report was next put in evidence, objections being first separately interposed to its introduction on the grounds: (1,) that the papers and evidence attached thereto should also be put in evidence; and, (2,) that the referee was without authority to make an award. To the overruling of each objection the defendant duly excepted.

John W. Douglass, one of the Commissioners for the District in office at the time of the appointment of the referee, testified on behalf of the plaintiff that the intention of the

Commissioners was to make the reference final. The evidence for the plaintiff was closed with the testimony of the plaintiff, who stated, in effect, that the letter of September 16, 1891, had been sent to the Commissioners with her approval, and that nothing had been paid her on account of the award. For the defendant, John W. Ross, who was a Commissioner at the time of the appointment of Mr. Johnson, testified that he was an attorney-at-law, knew the difference between an arbitration and order of reference for a report, and that his understanding when the appointment of Mr. Johnson as referee was made. was that the appointment was not of an arbitrator, but was simply one of reference. He further testified " there was no record of the appointment of the referee, except the one in evidence, unless the pencil memorandum may be taken as a record." The witness denied that he made statements attributed to him by the witnesses for the plaintiff, to the effect that it was the intention of the Commissioners that the decision of Mr. Johnson should be final.

After Mr. Ross had concluded his testimony, the record and proceedings in action No. 24,279 were introduced in evidence on behalf of the defendant. On the settlement of the bill of exceptions a dispute arose as to whether the papers attached to the report of the referee had been put in evidence by the offer made, but it is unnecessary to notice the action taken by the trial court with respect to that controversy.

In rebuttal, Mr. Williamson reiterated statements as to alleged declarations of Mr. Ross regarding the finality of the decision of the referee. On cross-examination he said:

"That he wrote the letter of September 16, 1891, at his office, 912 F street; that he did not know why the District filed exceptions, as it was understood that the report was to be final; that witness filed the motion to confirm the award because he thought it the best thing, the only thing, that could then be done, and that he thought it would be simply a matter of form, and he would have confirmation at once of the award, and that the money would be paid; but the District, instead of doing that, violated its agreement; that witness

did not remember ever consenting to the filing of exceptions to the award. Now that counsel shows him the paper which is the exception to the award, witness remembers that he signed the paper consenting that the exceptions should be filed *nunc pro tunc*. Mr. Richardson came to him and asked him if he would make any special objection to the exceptions being filed; that it ought to be filed, so that the District might make their objections, and for that purpose he did 'it, and did not consent to it because he thought it was not final; that there was not a copy of the award served by him on the Commissioners; that Mr. Johnson was their arbitrator, and it was not for witness to serve them with a copy."

The evidence was then closed. The trial judge granted a request of the defendant that the jury be instructed to render a verdict for the defendant in the first action, and an exception was duly noted on behalf of the administratrix. The trial judge also granted a request of counsel for the plaintiff, in substance that the jury be instructed to find for the plaintiff if they found from the evidence that the Commissioners accepted the proposition contained in Mr. Williamson's letter, that in pursuance of such acceptance the Commissioners made the order of January 11, 1892, and that the hearing before Mr. Johnson was proceeded with under such appointment, and the declaration amended at the hearing by consent of counsel. An exception was taken to the granting of this instruction.

The following requests for instructions were then asked on behalf of the defendant, which, being overruled, separate exceptions were noted:

"2. The jury are instructed, on the whole evidence in cause No. 34,564, they are to render a verdict for the defendant.

"3. The jury are instructed that the Commissioners of the District of Columbia were without authority to agree to submit the matters in controversy in the case of *Bailey, Adm'r, v. The District of Columbia,* at law, No. 24,279, to the final award of an arbitrator, but that said Commissioners had authority to agree to refer the case for the award and report of a referee, subject to the approval of the court."

"5. The jury are instructed that the plaintiff, as adminis-

tratrix of the estate of her deceased husband, was without authority to agree to refer the claim of the estate to arbitration without the previous direction of the Supreme Court of the District of Columbia, holding a special term for orphans' court business."

The bill of exception also states that exceptions were taken on behalf of the District to portions of the general charge of the court contained in brackets, but no portion of the charge, as contained in the printed record, is so marked.

A verdict was returned finding in favor of the defendant in action No. 24,279, and in favor of the plaintiff for $10,519.20 and interest in action No. 24,564. Judgment was subsequently entered upon the verdict, and both parties prosecuted error. The Court of Appeals of the District having affirmed the judgment, 9 App. D. C. 360, each party obtained the allowance of a writ of error from the court, and the consolidated cause is now here for review.

*Mr. Sidney T. Thomas* and *Mr. Andrew B. Duvall* for the District of Columbia.

*Mr. A. S. Worthington* for Bailey.

Mr. Justice White, after making the foregoing statement, delivered the opinion of the court.

The decision of this controversy involves two propositions. Did the Commissioners of the District of Columbia have the power to agree to submit the claim in issue to the award of an arbitrator? And if they did have the power, did they lawfully exercise it? To answer either of these questions it becomes essential to ascertain whether an agreement to submit to arbitration involves the power to contract. Both of the matters above stated depend upon this last inquiry, because both the claim that the District of Columbia did not in valid form exercise the power to submit to arbitration, and the assertion that if they so did they were not authorized to that end, rest on the claim that the submission was not made in

the form required by law to constitute a contract, and even if the alleged award was in legal form, nevertheless the District Commissioners were without power to contract for that purpose.

In determining whether an agreement to arbitrate involves the power to contract we eliminate at once from consideration consents to arbitrate made under a rule of court, by consent, in a pending suit, and shall consider only whether an agreement to arbitrate not under rule of court or within the terms of a statute enacted for such purpose is or is not a contract. We do this, because there is no pretence in the case at bar that the submission to arbitration was under a rule of court or equivalent thereto. Indeed, the courts below held that the submission of the claim in question to arbitration was a purely common law one and not made under a statute or rule of court; and in consequence of these views the courts held it to be their duty to make the award executory by rendering a judgment thereon, on the assumption that the parties having agreed to a common law submission were bound by reason thereof to abide by the award of the arbitrator.

The general rule is, "that every one who is capable of making a disposition of his property, or a release of his right, may make a submission to an award; but no one can, who is either under a natural or civil incapacity of contracting." Kyd, p. 35; Russell on Arbitrators, p. 14. And Morse, in the opening paragraph of his treatise on Arbitration and Award (p. 3), says: "A submission is a contract." And again, at p. 50: "The submission is the agreement of the parties to refer. It is, therefore, a contract, and will in general be governed by the law concerning contracts." In *Whitcher* v. *Whitcher*, 49 N. H. 176, the Supreme Court of New Hampshire said (p. 180): "A submission is a contract between two or more parties, whereby they agree to refer the subject in dispute to others and to be bound by their award, and the submission itself implies an agreement to abide the result, even if no such agreement were expressed." It was because a submission to arbitration had the force of a contract, that at common law a submission by a corporation aggregate was required to be

the act of the corporate body, Russell on Arbitrators, fifth edition, p. 20; which act was of necessity required to be evidenced in a particular manner.

It is true that an executor, at common law, had the power to submit to an award. But this power arose by reason of the full dominion which the law gave the executor or administrator over the assets, and the full discretion which it vested in him for the settlement and liquidation of all claims due to and from the estate. *Wheatley* v. *Martin*, 6 Leigh, 62; *Wamsley* v. *Wamsley*, 26 W. Va. 45; *Wood* v. *Tunnicliff*, 74 N. Y. 38. Whilst, however, the agreement of the executor to a common law submission was binding upon him, such a consent on his part did not protect him from being called to an account by the beneficiaries of the estate, if the submission proved not to be to their advantage, because the submission was the voluntary act of the executor and was not the equivalent of a judicial finding. 3 Williams on Executors, p. 326, and authorities cited. So, also, the power of a municipal corporation to arbitrate arises from its authority to liquidate and settle claims, and the rule on this subject is thus stated by Dillon (Mun. Corp. 4th ed. sec. 478):

"As a general proposition, municipal corporations have, unless specially restricted, the same powers to liquidate claims and indebtedness that natural persons have, and from that source proceeds power to adjust all disputed claims, and when the amount is ascertained to pay the same as other indebtedness. It would seem to follow therefrom that a municipal corporation, unless disabled by positive law, could submit to arbitration all unsettled claims with the same liability to perform the award as would rest upon a natural person, provided, of course, that such power be exercised by ordinance or resolution of the corporate authorities."

In the early case of *Brady* v. *Brooklyn*, 1 Barb. 584, 589, the power of a municipal corporation to submit to arbitration was ascribed to the capacity to contract, with a liability to pay, and it was held that corporations have all the powers of ordinary parties as respects their contracts, except when they are restricted expressly, *or by necessary implication*. In the

case of minor public officials or corporations, such as select-men and school districts, the power to arbitrate has been clearly rested upon the existence of the right to adjust and settle claims of the particular character which had been sub-mitted to arbitration. *Dix* v. *Dummerston*, 19 Vermont, 262; *Walnut* v. *Rankin*, 70 Iowa, 65. Indeed, the proposition that an independent agreement to submit to an award must depend for its validity upon the existence of the right to contract is so elementary that further citation of authority to support it is unnecessary.

Examining, then, the questions we have stated in their inverse order, we proceed to inquire whether the Commis-sioners of the District of Columbia had the power to enter into a contract of the nature of that under consideration. The solution of this inquiry requires a brief examination of the statutes, from which alone the powers of the Commis-sioners of the District are derived.

By the act of June 20, 1874, c. 337, "An act for the gov-ernment of the District of Columbia, and other purposes," 18 Stat. 116, the commission provided for in section 2 was vested with the power and authority of the then governor or board of public works of the District, except as therein-after limited, and it was provided that "said commission, in the exercise of such power or authority, shall make no con-tract, nor incur any obligation other than such contracts and obligations as may be necessary to the faithful administra-tion of the valid laws enacted for the government of said District, to the execution of existing legal obligations and contracts, and to the protection or preservation of improve-ments existing, or commenced and not completed, at the time of the passage of this act."

By the act of June 11, 1878, c. 180, "An act providing a permanent form of government for the District of Columbia," 20 Stat. 102, the District and the property and persons therein were made subject to the provisions of the act, "and also to any existing laws applicable thereto not hereby repealed or inconsistent with the provisions of this act." The Commis-sioners provided for in the act were, by section 3, vested with

all the powers, rights, duties and privileges lawfully exercised by, and all property, estate and effects vested in the Commissioners appointed under the provisions of the act of June 20, 1874, and were given power, subject to the limitations and provisions contained in the act, to apply the taxes or other revenues of the District to the payment of the current expenses thereof, to the support of the public schools, the fire department and the police. It was expressly enacted, however, in the same section, that the Commissioners in the exercise of the duties, powers and authority vested in them "shall make no contract, nor incur any obligation other than such contracts and obligations as are hereinafter provided for and shall be approved by Congress." In the same section it was further provided that the Commissioners should annually submit to the Secretary of the Treasury, for his examination and approval and transmission by him to Congress, a statement "showing in detail the work proposed to be undertaken by the Commissioners during the fiscal year next ensuing, and the estimated cost thereof; also the cost of constructing, repairing and maintaining all bridges authorized by law across the Potomac River within the District of Columbia, and also all other streams in said District; the cost of maintaining all public institutions of charity, reformatories and prisons belonging to or controlled wholly or in part by the District of Columbia, and which are now by law supported wholly or in part by the United States or District of Columbia; and also the expenses of the Washington Aqueduct and its appurtenances; and also an itemized statement and estimate of the amount necessary to defray the expenses of the government of the District of Columbia for the next fiscal year." Of the estimates as finally approved by Congress, the act provided that fifty per cent should be appropriated for by Congress, and the remaining fifty per cent assessed upon the taxable property and privileges in the District other than the property of the United States and of the District of Columbia. In the fifth section of the act provision was made for the letting by contract, after due advertisement, of all work of repair on streets, etc., where the cost would exceed one thou-

sand dollars, and it was also, in said section, stipulated that "all contracts for the construction, improvement, alteration or repairs of the streets, avenues, highways, alleys, gutters, sewers and all work of like nature shall be made and entered into only by and with the official unanimous consent of the Commissioners of the District, and all contracts shall be copied in a book kept for that purpose and be signed by the said Commissioners, and no contract involving an expenditure of more than one hundred dollars shall be valid until recorded and signed as aforesaid."

By section 37 of the act of February 21, 1871, c. 62, 16 Stat. 419, 427, it was provided as follows:

" All contracts made by the said board of public works shall be in writing, and shall be signed by the parties making the same, and a copy thereof shall be filed in the office of the Secretary of the District, and said board of public works shall have no power to make contracts to bind said District to the payment of any sums of money except in pursuance of appropriations made by law, and not until such appropriations shall have been made."

This section is deemed to be applicable to the present Commissioners. (Comp. Stat. Dis. Col. secs. 30 and 31, pp. 201–2.) So, also, by section 15 of the act of 1871, 16 Stat. 423, it was provided that the legislative assembly should not "authorize the payment of any claim, or part thereof, hereafter created against the District under any contract or agreement made, without express authority of law, and all such unauthorized agreements or contracts shall be null and void."

Section 13 of the joint resolution of June 1, 1878, embodies the second section of the joint resolution approved March 14, 1876, 19 Stat. 211, 212, which made it a misdemeanor for any officer or person to increase or aid or abet in increasing the total indebtedness of the District.

Under the statutes of 1874 and 1878, above referred to, it has been held that the District of Columbia still continued to be a municipal corporation, and that it was subject to the operation of a statute of limitations, *Metropolitan Railroad Co.* v. *District of Columbia*, 132 U. S. 1, and was also liable

for damages caused by a neglect to repair the streets within the District. *District of Columbia* v. *Woodbury*, 136 U. S. 450. But the mere fact that the District is a municipal corporation is not decisive of the question whether or not the Commissioners of the District had power to make a contract to submit to an award, for, as we have seen, it is not the mere existence of a municipal corporate being from which the power to make a submission to arbitration is deduced, but that the municipal corporation by which such an agreement is entered into has power to contract, to settle and adjust debts; in other words, all the general attributes which normally attach to and result from municipal corporate existence. Recurring to the statutes relating to the Commissioners of the District of Columbia, it is clear from their face that these officers are without general power to contract debts, or to adjust and pay the same; that, on the contrary, the statutes expressly deprive them of such power, and limit the scope of their authority to the mere execution of contracts previously sanctioned by Congress or which they are authorized to make by express statutory authority. The necessary operation of these provisions of the statutes is to cause the District Commissioners to be merely administrative officers with ministerial powers only. The sum of the municipal powers of the District of Columbia is neither vested in nor exercised by the District Commissioners. They are, on the contrary, vested in the Congress of the United States, acting *pro hac vice* as the legislative body of the District, and the Commissioners of the District discharge the functions of administrative officials.

There is no authority for holding that a mere administrative officer of a municipal corporation, simply because of the absence of a statutory inhibition, has the power, without the consent of the corporation speaking through its municipal legislative body, to bind the corporation by a common law submission. And this being true, with how much less reason can it be contended that the administrative officers of the District have such power without the consent of Congress, when the acts defining the powers of the Commissioners, by clear and necessary implication, contain an express prohibition to the contrary?

Nor is it in reason sound to say that because the District Commissioners have the power to sue and be sued, they have therefore the authority to enter into a contract to submit a claim preferred against the District to arbitration, and thus to oust the courts of jurisdiction, when no authority is conferred upon the Commissioners to contract to pay a claim of the character embraced in the arbitration, and no appropriation had been made by Congress for the payment of any such claim. It cannot be said that because Congress had appropriated for the improvement of streets, and therefore authorized a contract for such improvement to the extent of the appropriation, that it had also authorized and appropriated for a claim in damages asserted to have arisen from the fact that work had been stopped because the appropriation made by Congress had been exhausted. The appropriation of money to improve streets was in no sense the appropriation of money to pay a claim for unliquidated damages arising, not for work and labor performed and materials furnished, but from the refusal to permit the performance of work and labor and the furnishing of materials.

Aside from the prohibition imposed on the Commissioners of the District by the acts of Congress against entering into contracts for the payment of money for any claim not specifically appropriated for, an agreement to submit the claim in question to the arbitrament of a single individual was, if valid, a contract binding the District to pay any sum of money which the arbitrator might award. It cannot be doubted that if the District Commissioners themselves had seen fit to pass a resolution reciting that the appropriation by Congress for the improvement of the streets had been exhausted, and that a given sum of money was set aside to pay a claim for damages preferred against the District for having contracted when there was no appropriation, such action would have been, under the statutes, *ultra vires*. But if the express action of the Commissioners to this end would have been void, how can it be contended that by indirection, that is, by entering into an agreement to submit to an award, the Commissioners had the power to delegate to a third person an authority which

they themselves did not possess? Whilst the fundamental want of power in the District Commissioners to agree to a common law submission is decisive, there is another view which is equally so. By the express terms of the statute the Commissioners are forbidden to enter into any contract binding the District for the payment of any sum of money in excess of one hundred dollars, unless the same is reduced to writing and is recorded in a book to be kept for that purpose, and signed by all the Commissioners, the statute declaring, in express terms, that no contract shall be valid unless recorded as aforesaid. This mandatory provision of the statute clearly makes the form in which a contract is embodied of the essence of the contract. In other words, by virtue of the restrictions and inhibitions of the statute a contract calling for an expenditure in excess of one hundred dollars cannot take effect unless made in the form stated. The form, therefore, becomes a matter of fundamental right, and illustrates the application of the maxim *forma dat esse rei*. That the mere statement of the appointment of a referee on the minutes without the signature of any of the Commissioners did not comply with the requirements referred to, is too clear for discussion. The attempt to give effect to such entry as a contract without regard to the requirements of the law illustrates the wisdom of the statute and the evil of disregarding it, for on the trial two of the three commissioners testified, one on behalf of the plaintiff and the other on behalf of the defendant, and swore to directly opposite views as to whether or not there had been a common law submission by the Commissioners.

We have considered what has been referred to by counsel as the order of the Commissioners, according to its terms, which embraced only the matters contained in the action then pending, and have not regarded the parol evidence which sought to vary and contradict the writing by establishing that it was intended thereby to embrace a claim which had not been asserted in the action. The views we have advanced being decisive against the legality of the alleged award, it follows that the judgment in favor of the administratrix based thereon must be reversed. As, however, the consolidation of

the action upon the award with the original action for damages for breach of the contract for the resurfacing, and the trial of such consolidated cause, proceeded upon the hypothesis that a valid agreement to arbitrate had been entered into, the ends of justice will be subserved by also reversing the judgment in favor of the District entered in the original action. It is therefore ordered that the judgments be

> *Reversed and the cases remanded, with directions to dismiss the action No.* 34,564 *founded upon the alleged award, and to grant a new trial in action No.* 24,279.