FOX FILM CORPORATION v. OGDEN
THEATRE CO., Inc.

No. 5252. Decided December 29, 1932. Rehearing Denied March 22, 1934. (17 P. [2d] 294.)

*D. T. Lane* and *Thomas & Dahlquist,* all of Salt Lake City, for appellant.

*Samuel C. Powell,* of Ogden, for respondent.

BRAMEL, District Judge.

Fox Film Corporation, plaintiff in the court below, sued Ogden Theatre Company, Inc., defendant therein, for moneys alleged to be owing and unpaid under certain written contracts wherein it was agreed that plaintiff should furnish

to defendant, for exhibition in its theaters, certain moving picture films and news films, and that defendant should pay certain "rental and license fee" therefor. The case was tried by the court sitting without a jury. The judgment of the court was that plaintiff take nothing. From this judgment plaintiff appeals.

Appellant assigns many errors, but these assignments may be grouped into two classes, namely (1) those in which the court is alleged to have admitted oral evidence to add a stipulation to a written contract; and (2) those in which the court held the contracts sued upon to be unenforceable because contrary to public policy in that they were in aid of and part and parcel of a monopoly prohibited by federal law.

As to the admission of evidence: Plaintiff, in substance, in its first cause of action, alleges that on or about June 5, 1929, plaintiff and defendant entered into a contract in writing wherein plaintiff promised and undertook to deliver to defendant one copyrighted Fox Movietone News issue each week for fifty-two weeks with license to exhibit the same in defendant's theater at Ogden, Utah, and defendant promised to pay plaintiff as rental and license fee therefor the sum of $2,550 in installments of $37.50 per week for twelve weeks to August 29, 1929, and $52.50 per week for the next forty weeks; that plaintiff performed its part of said contract; that defendant accepted and exhibited twenty-two of said news issues, refused to accept any of the remaining thirty issues, and has paid only $825 on said contract, leaving $1,725 owing and unpaid.

For answer to this count, the defendant admits the execution of said contract, and alleges that at the time said contract was made it was agreed that said Fox Movietone News issues should be the latest issues of each week; that for a time the pictures were not the latest issues; that defendant complained of that fact; that plaintiff promised to rectify the matter and send the latest issues, but plaintiff did not recitfy the matter, and, on the contrary, continued to send

pictures that were not of latest issue, and defendant thereupon refused to accept the same.

The written contract in question was introduced in evidence by plaintiff. The contract contains, among other provisions, this stipulation: "Nineteenth: This contract is complete and no promises or representations have been made by either party to the other except as herein set forth." The contract also contains a stipulation to the effect that it is not binding until accepted in writing without alteration or change by an officer or duly authorized person of the distributor (i. e., plaintiff). It was signed by the Ogden Theatre Company, per H. W. Peery, manager, and by Charles L. Walker, salesman, and later approved by plaintiff company.

After plaintiff had introduced its evidence and rested, defendant, over the objection of plaintiff, gave evidence to the effect that, prior to and at the time the contract was signed by plaintiff, the salesman (Mr. Walker) represented and promised that the news reels would be the very latest news—"just out of the can," nobody would have "anything over us" in showing news—and that defendant was to get the latest news reels by airship. At the close of defendant's evidence, plaintiff moved the court to strike out all evidence of defendant concerning the above oral promises or representations, which motion was denied. Upon plaintiff's exception to the above rulings of the court, a question is presented to this court as to the competency of the evidence, to which plaintiff objected.

In the absence of fraud or mistake, the classical rule to the effect that parol evidence is not admissible to contradict, vary, add to, or subtract from the terms of a valid written instrument is generally applied in cases of this kind. There are numerous exceptions to this rule, however, ■ most of which pertain to informal writings, incomplete memoranda, unilateral documents, and other writings that do not purport to set forth the entire contract. In cases involving complete contracts signed by the parties

thereto and purporting to contain all their promises, representations, and undertakings, the rule is more strictly applied. 4 Jones Comm. on Ev. (2d Ed.) §§ 1494-1497; 22 Corpus Juris, pp. 1105, 1106, and notes; *Aetna Chemical Co.* v. *Spaulding & Kimball Co.*, 98 Vt. 51, 126 A. 582.

One well-recognized exception to the above rule is that extrinsic evidence, parol or otherwise, is admissible to explain a latent ambiguity in a writing. This does not mean that terms or conditions may be inserted into or taken out of the writing by direct oral assertions, but it does ■ mean that the court may receive evidence of such surrounding facts as will enable it to look upon the transaction through the eyes of the parties thereto and thereby know what they understood or intended the ambiguous word or provisions to mean. 4 Jones Comm. on Ev. § 1544 et seq.

A typical case illustrating the situation in which extrinsic evidence may be received to remove ambiguity is *Boley* v. *Butterfield,* 57 Utah 262, 194 P. 128. In that case the plaintiff, Boley, leased to defendant, Butterfield, for a stated rental, "a grazing permit" for a herd of sheep. Butterfield refused to pay the rental because Boley had prior to making the lease to him leased the right to graze sheep on the range in question to another sheepman. The lease to defendant did not purport to be exclusive, nor did it purport to be nonexclusive. It was ambiguous as to the matter in question. In order to determine whether the parties thereto intended the lease to be exclusive or otherwise, the court admitted extrinsic evidence to show that defendant before and at the time this lease was executed knew that Boley had leased a grazing right to another sheepman. Boley was permitted to testify that he told Butterfield of the existing lease before the lease in question was executed. Observe that he spoke in the past tense of a fact that then existed.

It may easily be seen from the above outline of the case that, in order to determine what the parties to the lease meant and intended as to whether it was to be exclusive or otherwise, it was necessary for the court to know as much

as the parties at the time of signing knew about the subject-matter. The evidence admitted enabled the court, so far as necessary, to see the transaction through the eyes and understanding of the parties. The testimony established a relevant fact but did not add a stipulation to the lease.

Direct oral evidence as to representations in the nature of warranties or as to statements that are in effect stipulations may not be received. 22 C. J. pp. 1118 and 1119, and notes.

From the record in this case we cannot infer that the parties to the contract in question were wholly inexperienced in the moving picture business. From what they knew of the business and its custom and practice, and of the art of making news reels, the places where made, and the customary manner of releasing and transporting the reels from the laboratories to the theaters, they undoubtedly had some common understanding of the time element implied in the very name of the article in question. The court was at liberty to hear evidence of such surrounding facts and circumstances and from the same to determine what that understanding was. *Ingram-Day Lumber Co.* v. *Schultz* (C. C. A.) 45 F. (2d) 359. We are of the opinion that the trial court erred in admitting oral testimony to the effect that the salesman represented or agreed that the Fox Movietone News should be the latest issues, and "just out of the can," and that it would be sent by airship, and other statements and representations to the same effect. In substance and effect they added stipulations to the contract.

Another point is raised as to the legality of the contract sued upon. Prior to the making of the contract in question here, the leading producers and distributors of moving pictures entered into a combination or trust by which they undoubtedly intended to monopolize the industry. This combination was declared to be a violation of the Sherman Anti-Trust Act (15 USCA § 1 et seq.) in a decision of the District Court of New York. *United States* v. *Paramount Famous Lasky Corp.*, 34 F. (2d) 984. The Supreme Court of the

United States affirmed that decision. *Paramount Famous Lasky Corp.* v. *United States*, 282 U. S. 30, 51 S. Ct. 42, 75 L. Ed. 145. The judgment of the court, which was affirmed by the Supreme Court of the United States, provides that nothing in the decree shall prevent the enforcement of contractual obligations which are consistent with the decree.

The contract sued upon is a standard form exhibitors' contract, containing the compulsory arbitration paragraph which gave this trust a dangerous power over the exhibitors. All members of the trust used this standard form of contract in dealing with the exhibitors. In one decision, at least, this standard form contract between producer and exhibitor has been held void in toto because of the arbitration clause and the existence of the trust. *Fox Film Corporation* v. *Tri-State Theatres*, 51 Idaho 439, 6 P. (2d) 135. Substantially the same ruling was made as to the standard contract in *Vitagraph, Inc.,* v. *Theatre Realty Co.* (D. C.) 50 F. (2d) 907, but in the latter case there is a suggestion that suit might lie in quantum meruit.

In the light of the above decisions, it is manifest that the arbitration provision in the contract before us is void. Both parties in this action admit that the arbitration provision is void, but respondent contends that this provision is inseparable from the body of the contract and thereby taints and nullifies the whole contract. The two cases last above cited sustain this contention.

Arbitration provisions in contracts are very generally held to be severable from the body of the contract. Arbitration provisions of the kind in question, that is, those types that are in no wise connected with the promises each party makes to the other, but which on the contrary look to the future and provide a method of arbitrating disputes that may arise, are by practically all courts held to be severable provisions. In fact an arbitration provision as to disputes that may arise in the future is treated as if it were a separate contract in and of itself. 2 R. C. L. "Arbitration and Award" §§ 11-13, and notes; 5 C. J. 234, and notes; *District of Colum-*

*bia* v. *Bailey*, 171 U. S. 161, 18 S. Ct. 868, 43 L. Ed. 118. An agreement in a contract to arbitrate disputes that may arise is not a part of the substance of the contract. It pertains to remedy only, and is collateral to the contractual matters. The contract was not made for the purpose of bringing about the arbitration. *First Ecclesiastical Society, etc.,* v. *Besse,* 98 Conn. 616, 119 A. 903; *Hamilton* v. *Home Ins. Co.,* 137 U. S. 370, 11 S. Ct. 133, 34 L. Ed. 708; *Anderson* v. *Odd Fellows' Hall,* 86 N. J. Law, 271, 90 A. 1007; *Read* v. *Ins. Co.,* 103 Iowa 307, 72 N. W. 665, 64 Am. St. Rep. 180; *Birmingham Fire Insurance Co.* v. *Pulver,* 126 Ill. 329, 18 N. E. 804, 9 Am. St. Rep. 598; *Tomlinson* v. *Dille,* 147 Md. 161, 127 A. 746. In fact every decision that holds invalid the provision that arbitration is a condition precedent to commencing an action impliedly holds the provisions severable, not a part of the consideration and not of the gist of the contract. *Blodgett Co.* v. *Bebe Co.,* 190 Cal. 665, 214 P. 38, 26 A. L. R. 1070.

We are of the opinion that the arbitration provisions in the contract at bar deal wholly with a method of procedure and are therefore severable from the body of the contract that fixes the obligations of the parties.

Respondent further contends that the arbitration paragraph, because of its illegality destroys the right of the plaintiff to obtain any relief under the contract, even for the pictures sold and delivered and used by the defendant. The Supreme Court of the United States in a recent decision says in effect that public policy is a vague and variable concept, and that, where a party who has obtained the benefits of a contract seeks to avoid performance of his promises on the ground that the contract contravenes public policy, the doctrine should not be invoked unless public interests so require. *Twin City Pipe Line Co.* v. *Harding Glass Co.,* 283 U. S. 359, 51 S. Ct. 476, 75 L. Ed. 1117.

Provisions in restraint of trade are held by most courts to be severable from the body of the contract and no bar to

enforcement of the remaining portion of the agreement, especially in cases where one party has obtained the benefits of performance by the other. There are cases in which contractual provisions that are felonious or malum in se may invalidate the whole contract, but the provision at bar is not in that category. It is, however, a provision that is tainted with evil design and deserves no praise. But it is clearly severable, and we are of the opinion that it comes within the rules laid down by a great majority of the decisions concerning similar provisions. *Pope-Turnbo* v. *Bedford*, 147 Mo. App. 692, 127 S. W. 426; *United States Consol. Seeded Raisin Co.* v. *Griffin & Skeelley Co.* (C. C. A.) 126 F. 364; *Ft. Smith, etc., Co.* v. *Kelley*, 94 Ark. 461, 127 S. W. 975; *Trentman* v. *Wahrenburg*, 30 Ind. App. 304, 65 N. E. 1057; *Livingston* v. *Railway Co.*, 142 Iowa 404, 120 N. W. 1040; *Piper* v. *Railroad Co.*, 75 N. H. 435, 75 A. 1041; *Monroe Water Works Co.* v. *City of Monroe*, 110 Wis. 11, 85 N. W. 685; *Central N. Y. Telephone Co.* v. *Averill*, 199 N. Y. 128, 92 N. E. 206, 32 L. R. A. (N. S.) 494, 139 Am. St. Rep. 878; *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540, 22 S. Ct. 431, 46 L. Ed. 679; *Continental Wall Paper Co.* v. *Lewis Voight & Sons Co.*, 212 U. S. 227, 29 S. Ct. 280, 53 L. Ed. 486; *Wilder Mfg. Co.* v. *Corn Products Refining Co.*, 236 U. S. 165, 35 S. Ct. 398, 59 L. Ed. 520, Ann. Cas. 1916A, 118; *Small Co.* v. *Lamborn & Co.*, 267 U. S. 248, 45 S. Ct. 300, 69 L. Ed. 597.

Respondent contends that the contract before the court is unenforceable under the Constitution and statutes of Utah. The Constitution declares combinations in restraint of trade unlawful and against public policy. Const. art. 12, § 20. Sections 4475-4485, Comp. Laws Utah 1917, provide that members of a combination or conspiracy to fix or regulate prices, etc., or quantity of production shall be deemed guilty of a public offense, and may be punished by fine or imprisonment, and that the agreement or compact so entered into shall be void. This law is aimed solely to punish the individual conspirators in

the manner and measure provided by the statutes. If the combination of producers and distributors had been made within the state of Utah, the members of the combination would be liable to prosecution under the Utah statutes. However, there is nothing in the statutes declaring void the sales contracts or other contracts made by members with third parties and the decisions cited above cover the cases made under the Utah laws.

We are of the opinion that the trial court erred in holding the contract void and unenforceable. As we view the case, this disposes of all questions presented. There is an assignment that the trial court erred in overruling a demurrer to a defense in defendant's answer and counterclaim. What is said herein concerning evidence is applicable to the matter in the pleading that was attacked by the demurrer, but it does not apply to the allegation of an oral agreement made subsequent to the contract. Inasmuch as the trial court gave no judgment for damages in favor of defendant and did adjudge that defendant take nothing, the findings upon that point are not reviewable on this appeal.

The judgment of the trial court is set aside, and this case is remanded for a new trial. Costs of appeal are awarded to appellant.

ELIAS HANSEN, FOLLAND, and EPHRAIM HANSON, JJ., concur.

STRAUP, J., dissents.

CHERRY, C. J., did not participate herein.