**Ruby J. WOOD, Plaintiff and Respondent,**

v.

**G. Eldon ROBERTS, George A. Dansie, and Builders and Engineers, Inc., Defendants and Appellants.**

**Nos. 15266 and 15152.**

Supreme Court of Utah.

Oct. 5, 1978.

Melvin E. Leslie, Salt Lake City, for defendants and appellants.

Keith E. Sohm, Salt Lake City, for plaintiff and respondent.

MAUGHAN, Justice:

Defendants appeal from an adverse judgment of the district court, sitting without a jury, on plaintiff's claims of breach of contract and breach of fiduciary duty. We affirm. All statutory references are to U.C.A., 1953, as amended. Costs are awarded to plaintiff.

Plaintiff and her husband, who died in 1971, agreed with defendants by means of a contract dated May 31, 1967 for the sale of approximately nine acres (hereinafter referred to as the first phase) in Salt Lake County to defendants for the purpose of creating a subdivision. The agreement specified a selling price of $3,000 per acre, and the Woods were to provide clear title to defendants.

A second transaction (hereinafter referred to as the second phase) resulted in a deed conveying an additional thirty-six acres from the Woods to defendants, dated April 5, 1969. Before the execution of the deed, the parties had negotiated two different written agreements, but had not signed either because plaintiff and her husband could not agree to a provision for sharing expenses of developing the subdivisions. Both of these proposed agreements provided for the Woods to receive $3,000 per acre, and the trial court found the parties intended $3,000 per acre to be the price for the second phase. The court also found in both phase one and phase two, defendants were to shoulder all expenses connected with the development and sale of building lots in the subdivision, which was to be known as West Jordan Estates.

As defendants subdivided and sold lots in phase one, the Woods signed deeds to the individual lot buyers. The proceeds were turned over to a bank, and later a title company, for division among various lienholders, the Woods and defendants. From the total phase one sales price of $27,390, the district court credited defendants with $23,192.89 for payments made, and awarded plaintiff $4,197.11 plus interest and attorney's fees, according to the contract.

After defendants received a deed for the thirty-six acres comprising phase two, they in turn deeded the land to a title company, which handled the individual lot sales. Plaintiff and Mr. Wood received no money when they executed the deed, but were to be paid by the title company as the lots were sold. Because several mortgages still existed upon the phase two lands, the title company was to pay them off as the lots were sold, and pay plaintiff and her husband any excess amounts up to $3,000 per acre. During 1969, defendants made certain payments on the mortgages, and commenced in earnest the development of phase two. Subsequent lot sales paid the mortgage liens, and repaid defendants for their expenditures. The district court found plaintiff was entitled to $49,537.17 plus interest amounting to over $18,000, after deducting the mortgage amounts and expenses.

In count four of her complaint, plaintiff alleged defendants fraudulently acquired title to a farm house owned by plaintiff by including its description in a deed without plaintiff's knowledge. Defendants later sold the home to plaintiff's daughter for $12,000. The court awarded plaintiff $12,000 plus interest, and also $11,588.39 for certain water shares and for a lot sold to one Bauer.

Defendants assert the district court erred in several aspects. Some of these alleged errors deal with insubstantial statements in the findings of facts; since they have no effect on the judgment as it affects defendants, we decline to address them.

■ Defendants contend the evidence at trial was not sufficient to support a finding that defendants agreed to pay plaintiffs $3,000 per acre for the phase two lands. The two proposed agreements which were unsigned both mentioned the $3,000 price, however, and both parties admitted there was no dispute over that figure. We agree with the trial court that the parties contemplated a sales price of $3,000 per acre.

■ Defendant next claims the court erred by finding plaintiff's house was in-

cluded in a deed to defendants without plaintiff's knowledge. Defendants contend the farm property was included in the negotiations with plaintiff's deceased husband, but plaintiff denies any such knowledge. In any event, plaintiff was never paid for the property, and we think the evidence supports the trial court's award of $12,000 plus interest. The court's conclusion the $3,000 per acre price did not apply to the farm house is supported by the evidence indicating the house was in habitable condition, and was not situated within the area for development under phase one or phase two.

 Asserting the parol evidence rule was violated, defendants state the court erred by admitting into evidence the unexecuted agreements negotiated by the parties prior to the deed covering the lands in phase two. The proposed agreements called for a $3,000 price per acre, and supported the court's finding that such was intended price for the phase two lands. The rule is well established, evidence of prior negotiations is inadmissible to contradict terms of a final instrument.[1] However, the rule does not prevent a party from showing the actual consideration in a deed, since the normal recital of consideration in a deed is merely a receipt. In addition, the deed itself specified the consideration to be "Ten Dollars and other good and valuable considerations," and evidence is admissible to show what that consideration was. Hence, the court did not err in admitting the prior agreements into evidence.

Defendant next argues the court erred in finding a trust relationship existed between the parties. We find it unnecessary to address this assertion; the facts support the court's finding of a $3,000 per acre purchase price, and plaintiff established she has not received payment, after allowing defendants credit for the amounts paid on the Wood mortgages. The court's award can thus be sustained on this ground alone, and we decline to discuss whether a resulting or constructive trust arose.

Finally, defendants argue the statute of limitations bars plaintiff's action. 78–12–23 provides a six-year limitation for actions based upon a contract, obligation or liability founded upon an instrument in writing. The deed conveying the phase two lands to defendants was executed April 5, 1969, and formed the basis for defendant's obligation to pay plaintiff the purchase price, reduced by the appropriate credits. Suit was thus timely filed by plaintiff in 1974.

ELLETT, C. J., and CROCKETT, WILKINS and HALL, JJ., concur.

---

1. *Fox Film Corp. v. Ogden Theatre Co.*, 82 Utah 279, 17 P.2d 294 (1932); *Lamb v. Bangart*, Utah, 525 P.2d 602 (1974).