PIGGLY WIGGLY OPERATORS' WARE-
HOUSE, INC., Plaintiff-Appellant,

v.

PIGGLY WIGGLY OPERATORS' WARE-
HOUSE INDEPENDENT TRUCK
DRIVERS UNION, LOCAL NO. 1, De-
fendant-Appellee.

No. 77–3306.

United States Court of Appeals,
Fifth Circuit.

Feb. 8, 1980.

Rehearing Denied March 7, 1980.

John E. McFall, Norman A. Mott, III, Cornelius R. Heusel, New Orleans, La., for plaintiff-appellant.

L. Edwin Greer, Shreveport, La., for defendant-appellee.

Before JONES, BROWN and RUBIN, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

The relatively small number of reported cases contesting the countless arbitration proceedings convened to resolve labor-management disputes attests to the parties' general satisfaction with this method of resolving industrial problems. Here we deal with the exceptional case in which the arbitration proceeding is later contested; the issue is whether the arbitrator exceeded the permissible scope of his authority. Concluding that, under the terms of the grievance submitted for arbitration, the arbiter was fully authorized by both parties to decide the issue between them on the grounds on which he relied, we affirm the district court's summary judgment in favor of the union.

I.

In 1976, the employer and the union began negotiating a collective bargaining agreement covering the employer's over-the-road truck drivers. By August the negotiators had agreed on a draft, but the union had not yet approved it. In a meeting with the company's negotiator arranged at request of the union's business agent, the business agent said the contract could be ratified if the company would agree to several changes in the draft. The company negotiator agreed to make these concessions if the union would agree to insert this clause:

> Any driver who becomes uninsurable by any of the Company's insurance carriers will be subject to immediate discharge.

The business agent concurred, the company typed a revised draft with the quoted sentence inserted as Section z, Article 21, and representatives of both parties later signed it.

Two months later, Mr. Strickland, a driver, was discharged when the employer's insurance carrier declared him uninsurable. The insurer's action was based on a comput-

er print-out of Mr. Strickland's driving record that showed three violations of applicable laws. Neither the insurer nor the employer communicated with Mr. Strickland about his record. Considering him improperly discharged, the union filed a grievance on his behalf asserting:

Purported Section (z) of Article 21 of the contract is not a valid term of the contract. Second, my driving record is a direct and inevitable consequence of company policies and cannot be used to penalize me. Third, any violations prior to the effective date of this contract cannot be used to my disadvantage pursuant to an understanding and agreement between the parties to the contract. Further, I deny that I am uninsurable as alleged in the company's letter.

As the contract provided, the grievance was presented to Mr. Strickland's supervisor and then to a joint committee. When these steps failed to resolve the dispute, the union gave notice of its desire to arbitrate. The parties selected an arbitrator from a list of names supplied by the Federal Mediation and Conciliation Service and submitted the grievance to him without entering into a separate submission agreement. At no time did the employer contend that the grievance or any part of it was not a proper subject for arbitration.

The arbitrator held an evidentiary hearing and concluded that the discharge was improper, in part because Mr. Strickland had not been given any prior warning and had not been given a chance to defend himself by showing that there were valid explanations excusing the driving violations. However, the award was based primarily on the determination that Article 21(z) was not a part of the contract because, while the draft of the collective bargaining agreement was approved by the union's membership, this article had never been submitted to the union and the union had not consented to it.

The arbitration procedure set forth in the contract provides:

The Arbitrator shall have no authority to change, amend, add to, subtract from, modify or amend any of the terms or provisions of this Agreement.

Contending that the contract is clear, the employer asserts that the arbitrator exceeded his authority by modifying or rewriting it and seeks to have the award vacated. The essence of the award, the employer therefore contends, was not drawn from the collective bargaining agreement. Neither party contends that the collective bargaining agreement is invalid; the company's position is that all of it is binding, the union's is that the arbiter had authority to decide that Article 21(z) is simply not a part of the contract.

## II.

National policy, embodied in the National Labor Relations Act, as amended June 23, 1947, 29 U.S.C. § 173(d)[1], favors the orderly resolution of labor-management grievances through arbitration. *United Steelworkers v. American Manufacturing Co.,* 1960, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403; *United Steelworkers v. Warrior & Gulf Nav. Co.,* 1960, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409; *United Steelworkers v. Enterprise Wheel and Car Corp.,* 1960, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424. An agreement between an employer and a union to arbitrate disputes that may arise between them in the future is valid and enforceable. *Textile Workers Union v. Lincoln Mills,* 1957, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972.

Such an agreement is not self-executing. It is usually supplemented by provisions in the collective bargaining agreement specifying the preliminary action to be taken in an effort amicably to resolve the dispute and the method of invoking arbitration should conciliation fail. The procedure is usually set forth in a portion of the agree-

[1]. "Final adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes arising over the application or inter-pretation of an existing collective-bargaining agreement."
29 U.S.C. § 173(d).

ment referred to as the grievance procedure. The contract between these parties embodied such a procedure.

The contract also provided, as such agreements typically do, that, if a grievance is not settled during the preliminary stages and arbitration is demanded, the union and the company will attempt to select an arbitrator "to hear the grievance." If they are unable to agree, either party may request the Federal Mediation and Conciliation Service to submit a list of five impartial arbitrators from which they will select one.

Customarily, an arbitration hearing is informal; either or both parties may not be represented by counsel, evidence is admitted without regard to the strictures of judicial rules and no transcript of the testimony is made. The agreement generally provides, as it did here, that the arbitrator's decision is final and binding.

■ Arbitration thus conducted is "part and parcel of the collective bargaining agreement itself." *United Steelworkers v. Warrior & Gulf Navigation Co., supra*, 363 U.S. at 578, 80 S.Ct. at 1351, 4 L.Ed.2d at 1415. Accordingly, the arbitrator's award is not subject to judicial review on the merits, for "[t]he federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." *United Steelworkers v. Enterprise Wheel & Car Corp., supra*, 363 U.S. at 596, 80 S.Ct. at 1360, 4 L.Ed.2d at 1427. The courts "have no business weighing the merits of the grievance, considering whether there is equity in a particular claim or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious." *United Steelworkers v. American Manufacturing Co., supra*, 363 U.S. at 568, 80 S.Ct. at 1346, 4 L.Ed.2d at 1407.

■ Judicial deference to arbitration, however, does not grant carte blanche approval to any decision an arbitrator might make. *Machinists, Local 2003 v. Hayes*

*Corp.*, 5 Cir. 1961, 296 F.2d 238, 243, *aff'd on rehearing*, 5 Cir. 1963, 316 F.2d 90. The arbitrator's authority is circumscribed by the arbitration agreement, and he can bind the parties only on issues that they have agreed to submit to him. Whether an arbitrator has exceeded these bounds is an issue for judicial resolution. *Torrington Co. v. Metal Products Workers, Local 1645*, 2 Cir. 1966, 362 F.2d 677, 680. For that reason, an arbitrator who derives his power solely from the contract cannot hold that charter to be legally ineffective. *International Ladies' Garment Workers' Union v. Ashland Industries, Inc.*, 5 Cir. 1974, 488 F.2d 641, *cert. denied*, 1975, 419 U.S. 840, 95 S.Ct. 71, 42 L.Ed.2d 68; an arbitrator's award must draw "its essence from the collective bargaining agreement." *United Steelworkers of America v. Enterprise Wheel & Car Corp., supra*, 363 U.S. at 597, 80 S.Ct. 1361, 4 L.Ed.2d at 1428; *Safeway Stores v. American Bakery & Confectionery Workers*, 5 Cir. 1968, 390 F.2d 79, 81; *Local Union No. 787, International Union of Electrical Radio and Machine Workers v. Collins Radio Co.*, 5 Cir. 1963, 317 F.2d 214, 216.

■ The scope of an arbitrator's authority, however, is not always controlled by the collective bargaining agreement alone. That agreement constitutes merely a promise to arbitrate, C. Updegraff and W. McCoy, Arbitration of Labor Disputes, 85 (2d Ed. 1961). Before arbitration can actually proceed, it is necessary for the parties to supplement the agreement to arbitrate by defining the issue to be submitted to the arbitrator and by explicitly giving him authority to act. *See District of Columbia v. Bailey*, 1897, 171 U.S. 161, 18 S.Ct. 868, 43 L.Ed. 118. This statement of issues and designation of the arbiter is frequently incorporated into a separate document, called a submission agreement.

■ If a party refuses to arbitrate a question, the crucial issue is whether the collective bargaining agreement requires it to do so. *See Safeway Stores v. Bakery Workers, Local 111*, 5 Cir. 1968, 390 F.2d 79, 81. In that event arbitrability is ordinarily a question of contract interpretation for the

courts, *Local 149 etc. v. General Electric Co.,* 1 Cir. 1957, 250 F.2d 922, *cert. denied,* 1958, 356 U.S. 938, 78 S.Ct. 780, 2 L.Ed.2d 813. Even this issue may be submitted to binding arbitration, however, if there has been a clear demonstration that the parties contemplated it. *United Steelworkers v. Warrior & Gulf Navigation Co.,* 1969, 363 U.S. 574, 583 n. 7, 80 S.Ct. 1347, 1353 n. 7, 4 L.Ed.2d 1409. *See, e. g., Metal Product Workers Union, Local 1645 v. Torrington Co.,* 2 Cir. 1966, 358 F.2d 103, 105.

■ However, once the parties have gone beyond their promise to arbitrate and have actually submitted an issue to an arbiter, we must look both to their contract and to the submission of the issue to the arbitrator to determine his authority. *Washington-Baltimore Newspaper Guild v. The Washington Post Co.,* D.C.Cir.1971, 143 U.S. App.D.C. 210, 212, 442 F.2d 1234, 1236; *Lee v. Olin Mathieson Chemical Corp.,* D.W.D. Va.1967, 271 F.Supp. 635, 639. *See also Textile Workers' Union of America, AFL–CIO, Local Union No. 1386 v. American Thread Co.,* 4 Cir. 1961, 291 F.2d 894; *Truck-Drivers, etc., Union, Local 784 v. Ulry-Talbert Co.,* 8 Cir. 1964, 330 F.2d 562; *cf. Continental Materials Corp. v. Gaddis Mining Co.,* 10 Cir. 1962, 306 F.2d 952, 954 (commercial arbitration).

■ If the parties enter into a submission agreement, this later contract is the substitute for legal pleadings; it joins the issues between the parties and empowers the arbitrator to decide it. M. Beatty, Labor-Management Arbitration Manual 107 (1960); S. Kagel, Anatomy of a Labor Arbitration 55 (1961); N. Levin & G. Aksen, eds. Arbitrating Labor Cases 108 (1974); M. Trotta, Labor Arbitration 87–88 (1961); C. Updegraff & W. McCoy, Arbitration of Labor Disputes 72–73 (1961). *See also* American Arbitration Association, Voluntary Labor Arbitration Rules, Part III, paragraphs 7 and 8. The arbiter's jurisdiction is then not limited to the issues that the parties could have been compelled to submit; the parties may agree on this method of resolving disputes that they were not compelled to submit to arbitration.[2]

■ The parties may act formally and enter into a written submission agreement or they may merely ask the arbiter to decide the written grievance as it has been posed in their conciliation efforts. When they do so, they have in effect empowered him to decide the issues stated in the grievance. The grievance itself becomes the submission agreement and defines the limits of the arbitrator's authority. Arbitration is a matter of contract, *International Ladies' Garment Workers' Union v. Ashland Industries, Inc.,* 5 Cir. 1974, 488 F.2d 641, 644, *cert. denied sub nom. Alfin v. International Ladies Garment Workers' Union,* 419 U.S. 840, 95 S.Ct. 71, 42 L.Ed.2d 68, but the initial contract to arbitrate may be modified by the submission agreement or grievance.

### III.

■ In this case, neither party questioned the arbitrability either of the dispute stated in the grievance or of the issues set forth in it; the entire grievance was presented to the arbitrator without reservation. It was only after he had decided the Article 21(z) issue adversely to the employer that it sought to raise the question of his jurisdiction. In *International Brotherhood of Teamsters v. Washington Employers, Inc.,* 9 Cir. 1977, 557 F.2d 1345, 1350, the court found in similar circumstances that, by submitting an issue to arbitration, the employer had waived any objection to the arbitrator's jurisdiction. Whether in technical legal terms the surrender of the possible argument that a certain dispute is not covered by the promise to arbitrate should be considered a waiver is not of present moment. On whatever basis it rests, waiver, estoppel or new contract, the result is that the grievance submitted to the arbiter defines his authority without regard to whether the parties had a prior legal obligation to submit the dispute.

It is, therefore, irrelevant to our decision whether the company might properly have refused to submit to the arbitrator the va-

2. *See* M. Beatty, Labor-Management Arbitration Manual 41 (1960).

lidity of Article 21(z). Nor are we faced with deciding what authority the arbiter might have exercised had the grievance been solely that, under the contract, Mr. Strickland's discharge was unjust. In that event, we would surely heed the Supreme Court's admonition: "an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice." *United Steelworkers v. Enterprise Wheel & Car Corp.,* 1960, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1428.

Here the arbitrator was presented with the issues contained in the grievance. He was not free to reinterpret the parties' dispute and frame it in his own terms. When selected to decide whether "purported Section (z) of Article 21 of the contract is not a valid term of the contract," he was directed to determine whether that part of the document was or was not to be considered in deciding the grievance. His authority rested on the grievance, and in view of its terms, we need not decide whether the contract itself permits arbitration of the validity of one of its provisions. *Compare Leyva v. Certified Grocers of California, Ltd.,* 9 Cir. 1979, 593 F.2d 857, 866 (the mere fact that arbitrator cannot modify the agreement does not mean he cannot determine what provisions are in fact part of the agreement).

The employer does not contend that we should inquire into the basis for the result reached by the arbiter. The contract itself forbids us to do so, making his award final. For these reasons, the judgment of the district court is AFFIRMED.

JONES, Circuit Judge, dissenting:

The challenged provisions of the contract are plain and unambiguous. The Union knowingly wrote them into the contract. The arbitrator was not authorized to write them out of the contract. The contract should be upheld.

I dissent.