**ALLIED OIL WORKERS UNION**

v.

**ETHYL CORPORATION.**

**Civ. A. No. 83–1298–B.**

United States District Court, M.D. Louisiana.

Nov. 20, 1984.

Randall G. Wells, Lindsay & Marcel, Baton Rouge, La., for plaintiff.

G. Michael Pharis, Taylor, Porter, Brooks & Phillips, Baton Rouge, La., for defendant.

POLOZOLA, District Judge.

Allied Oil Workers Union (AOWU) has filed this action pursuant to 29 U.S.C. § 185 to compel arbitration as provided in a collective bargaining agreement between the union and Ethyl Corporation (Ethyl).[1] This matter is now before the Court on cross-motions for summary judgment filed by the parties. The sole issue before the Court is whether the dispute complained of is a grievance under the terms and conditions of the contract, and, therefore, subject to arbitration. For reasons which follow, the Court finds that the contract does not require arbitration of the current dispute between the parties under the facts of this case.

AOWU is a labor organization [2] which is the exclusive and certified collective bargaining representative acting for and on behalf of two separate bargaining units at the Ethyl plant.[3] One unit is composed of the clerical and office employees, including cafeteria workers and hospital employees. The other unit is composed of wage roll hydrocarbon maintenance and production employees and R & D laboratory assistants. The parties have a written collective bargaining agreement which was signed on June 2, 1981 and was in force at the time of the acts complained of. The union contends that Ethyl improperly laid off certain employees in violation of this agreement. Ethyl contends the employees who were laid off were supervisory personnel who were specifically excluded from the terms of the agreement.

The Court finds that the agreement specifically excludes supervisors from the terms and conditions of the collective bargaining agreement. Since supervisors are not considered employees within the meaning of the agreement, the dispute is not a grievance subject to arbitration. It is clear from the terms of the contract that the parties never contractually agreed to arbitrate layoffs involving supervisors.

The facts leading up to the layoffs are not in dispute. In September of 1983, Ethyl advised the union that it was shutting down the entire PVC area of the Baton Rouge plant. Ethyl also decided to close the vinyl chloride (VCl) and methyl chloride (MeCl) units in the hydrocarbon area of the plant. On October 11, 1983, Ethyl advised the AOWU that as a result of this decision, 125 persons would be affected by

---

1. 29 U.S.C. § 185 gives federal district courts jurisdiction over suits for alleged violations of contracts between employers and labor unions which represent employers in an industry affecting commerce as defined by the Labor Management Relations Act. Thus, the Court has jurisdiction herein.

2. The AOWU is a labor organization within the meaning of 29 U.S.C. § 152(5).

3. Ethyl is an employer within the meaning of 29 U.S.C. § 152(2), (6), and (7).

the shutdown.[4] A total of forty-four persons were laid off on November 10, 1983. In the initial layoff, there was no reduction in the number of supervisory employees, and no supervisory employees were returned by Ethyl to the bargaining unit as was permitted under the agreement.

O.T. Vince, president of the AOWU, filed a grievance with Ethyl on November 8, 1983.[5] In his letter, Vince contended Ethyl violated Section 1237, paragraph 2, of the agreement.[6] Thereafter, ten supervisory employees chosen by Ethyl were returned to the bargaining unit.[7] After these supervisory employees were returned to the bargaining unit, ten bargaining unit employees were laid off.[8] The record reveals that some employees who were laid off had more plant seniority than four supervisors who remained on the job. It is this result which the union now complains of. The union seeks to have Ethyl arbitrate whether Section 1237 of the agreement applies to supervisors.

Whether or not a party is bound to arbitrate and what issues it must arbitrate is a matter to be determined by the Court on the basis of the contract entered into by the employer and the union. The employer has no duty to arbitrate issues which it has not agreed to arbitrate and cannot be compelled to arbitrate if the arbitration clause does not bind him to do so.[9]

*John Wiley and Sons, Inc. v. Livingston*, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); *Atkinson v. Sinclair Refining Company*, 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962); *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Independent Truck Drivers Union, Local No. 1*, 611 F.2d 580 (5th Cir.1980).[10] Because the duty to arbitrate is of contractual origin, "a compulsory submission to arbitration cannot precede judicial determination that the collective bargaining agreement does in fact create such a duty." *John Wiley and Sons, Inc. v. Livingston*, supra. 84 S.Ct. at 913.

Thus, it is necessary to review the collective bargaining agreement in this case to determine whether the contract calls for arbitration and, if so, whether the arbitration clause is broad enough to cover the issue before the Court. Article V of the agreement [11] sets forth the procedure for the "Adjustment of Grievances or Complaints". Section 502 defines a grievance as follows:

"A grievance, as that term is used in this Agreement, means any dispute the UNION or employee has with the COMPANY involving the proper application, interpretation, or compliance with the specific written provisions of this Agreement. If the UNION or any employee

---

**4.** Both AOWU-represented wage and clerical employees and some non-AOWU represented supervisory personnel were affected by the layoff in the hydrocarbon area.

**5.** Grievance Number V–5–83.

**6.** Section 1237 of the collective bargaining agreement, paragraph 2, sentence 1, provides as follows:

"In the event of a layoff, the employees with the least plant seniority will be laid off."

**7.** When a supervisory employee is returned to the bargaining unit, he is permitted to exercise his retained seniority rights under Section 1211 of the agreement. No grievance was filed over the return of these ten employees to the bargaining unit.

**8.** The parties agree that a supervisory employee who is removed as a supervisor may be returned to the bargaining unit.

**9.** The Court is aware that national labor policy favors arbitration of labor disputes. *United Steelworkers of America v. Warrior and Gulf Navigation Company*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). However, in the *United Steelworkers* case, the United States Supreme Court noted that arbitration "is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." 363 U.S. at 582, 80 S.Ct. at 1353.

**10.** "If any party refuses to arbitrate a question, the crucial issue is whether the collective bargaining agreement requires it to do so. In that event arbitrability is ordinarily a question of contract interpretation for the courts." *Piggly Wiggly*, supra, 611 F.2d at 583.

**11.** There are five separate sections in Article V. Only Section 502 is applicable herein.

has a complaint that does not come under the meaning of the above, the adjustment of said complaint will be limited to the first four (4) steps of the grievance procedure outlined below."

Article VI of the agreement contains an arbitration provision.[12] Article VI provides that the "following steps shall be followed in processing UNION or employee grievances:

602. *Function of the Arbitrators*

"The sole function of the arbitrators shall be to determine whether the COMPANY or the UNION is correct with reference to the proper application and interpretation of, or compliance with, the written provisions of this Agreement and the arbitrators shall not have any authority to change, amend, modify, supplement or otherwise alter in any respect whatsoever this Agreement, or any part thereof. It is further understood and agreed that the provisions of this Article shall not apply to matters affecting the change in salaries and rates of pay as set forth in Exhibit "A" attached hereto; the provisions of this Article shall not apply to the administration and contents of the COMPANY'S Industrial Relations Plans which are listed in Article XIII hereof; also, the provisions of this Article shall not apply to or change the procedure set forth in Article VIII hereof with reference to the evaluation of jobs by an outside arbitrator; *nor shall the provisions of this Article apply to working practices unless said practices are set forth in this written Agreement executed between the COMPANY and the UNION.* It is understood and agreed that this provision will not alter or change any part of this Agreement. (Emphasis supplied.)

The issue which the union wishes to arbitrate is whether Section 1237 of the agreement applies to supervisors. More specifi-

cally, the issue before the Court is whether supervisors are covered by the bargaining agreement. It is clear that the union's dispute with the company is over the question of whether Ethyl has the right to return the supervisor with the least plant seniority to the bargaining unit. Ethyl contends it has the right to determine who its supervisors will be and that there is no obligation under the agreement to promote or terminate a supervisor on the basis of seniority.[13]

The collective bargaining agreement defines the term "employees" as it is used in the agreement and also clarifies the status of supervisory employees under the agreement. Thus, Article 1, Section 101 defines the term "employee" as follows:

"Unless the language otherwise clearly indicates, the term 'employees', as used herein, means any or all and only those employees of the COMPANY included within the unit appropriate for collective bargaining purposes as defined in the first paragraph of this Agreement." The first paragraph of the agreement provides:

"THIS EXTENDED AGREEMENT entered into this 2nd day of June 1981, between ETHYL CORPORATION, a corporation, hereinafter referred to as the COMPANY, and the ALLIED OIL WORKERS UNION, hereinafter referred to as the UNION, acting for and on behalf of all those production, maintenance, shipping, receiving and laboratory employees of the COMPANY'S plant at Baton Rouge, Louisiana, included in the collective bargaining unit established by the National Labor Relations Board in Case No. 15–R–1441, which *excludes* office, clerical, professional and *all supervisory employees* with the right to hire, promote, discharge, discipline or otherwise effect changes in the status of em-

---

**12.** Sections 601 to 608 set forth the rules and procedures for arbitration under the contract.

**13.** Article III of the agreement provides for Management Rights. Article III states in part that the "management of the COMPANY'S Baton

Rouge, Louisiana, Plant, including the direction of its working forces, is vested in the COMPANY, except as otherwise specifically relinquished or limited by the provisions of this Agreement. * * *".

ployees or effectively recommend such action." (Emphasis supplied.)

After reading the above provisions it is clear that the contract *specifically exempts supervisors* from the term or definition of employees as that term is used in the collective bargaining agreement.

Furthermore, Section 1211 of the agreement[14] specifically provides that supervisors "shall not be subject to the terms and conditions" of the agreement.[15]

■ A careful review of the contract, including the unambiguous provisions cited above, reveal that supervisors are not employees within the meaning of the collective bargaining agreement and, therefore, are not members of the bargaining unit represented by the union. Thus, it is clear that Section 1237 does not apply to supervisors since supervisors are neither employees nor members of the union's bargaining unit. It is only *after* Ethyl decides to return the supervisor to the bargaining unit that Section 1237 would apply.

The clear intent of the parties to exclude supervisors from the bargaining unit and from the provisions of the bargaining agreement is also reflected in Section 1611 of Article XVI of the contract which pertains to "union activities" and "work clause". Section 1611[16] provides in part that "[f]oremen and supervisory employees shall not be assigned to work which is usually performed by UNION-represented employees ...".

In summary, the Court finds as follows:

The union has never negotiated for or on behalf of any supervisor. Ethyl has always determined who to select as supervisors and for how long; what salary will be paid to the supervisor; the benefits supervisors are to receive; and, when and where the supervisors will work. At no time has the union participated in the selection or termination of a supervisor. Seniority is not a controlling factor in determining who to promote to a supervisory position, or who should be terminated as a supervisor. Supervisory employees have been excluded from the collective bargaining agreement since 1947.

The parties never intended for all disputes to go to arbitration. Since supervisory personnel are not covered by the collective bargaining agreement, the Court cannot require Ethyl to arbitrate the layoff of supervisors. The dispute plaintiff complains of is not a grievance within the meaning of the collective bargaining agreement and, therefore, is not subject to arbitration.

Therefore, plaintiff's motion for summary judgment shall be denied and defendant's motion for summary judgment shall be granted. Judgment shall also be entered dismissing plaintiff's suit with prejudice at plaintiff's cost.

14. Section 1211 is included under Article XII of the contract dealing with seniority.

15. Section 1211 reads as follows:
"*Supervisory positions* above the rank of the highest classification of each department *shall not be subject to the terms and conditions of this Agreement* but employees so promoted shall retain and continue to accumulate seniority in the classification from which they were promoted." (Emphasis supplied.)

16. Section 1611 reads as follows:
1611. *Supervisory Work Clause*
Foreman and supervisory employees shall not be assigned to work which is usually per-

formed by UNION-represented employees, except that Foreman, Supervisors and technical employees may perform such work in emergencies or when acting as instructors. Current practices on experimental work will be continued.
Foreman, Supervisors and technical employees may also perform such work when engaged in the start-up of new equipment or in attempting to correct problems during periods of unusual and upset operations. The COMPANY shall exercise this privilege in a reasonable manner and for reasonable times, and shall not employ it as a means of decreasing the usual number of wage-roll employees required for an efficient operation.