**SUN SHIP, INC.**

v.

**MATSON NAVIGATION COMPANY.**

**Civ. A. No. 85–0141.**

United States District Court,
E.D. Pennsylvania.

March 29, 1985.

---

Jeffery C. Hayes, Michael T. Scott, Richard W. Foltz, Jr., Philadelphia, Pa., for plaintiff.

David P. Bruton, Alfred W. Putnam, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

KATZ, District Judge.

Sun Ship, Inc. petitions this Court to vacate or to correct an award in a commercial arbitration between it and Matson Navigation Company.[1] I will deny the Petition and affirm the arbitration award in all respects.

On May 8, 1980, the parties entered into a "Contract for the Reconstruction of one Roll-on/Roll-off Trailervessel named "LURLINE." The contract called for Sun Ship to modify the vessel for Matson in order to make the ship suitable for carrying containerized cargo. The contract price was $30,-624,500 and required redelivery of the vessel by December 31, 1981. Sun Ship agreed to pay $10,000 in liquidated damages for each day of unexcused delay.

The contract contained a broad arbitration clause which provided for arbitration "[i]n the event of any dispute or difference as to any matter or thing between Matson and Shipbuilder in the contract which cannot be settled...." Although the contract provided for the application of Pennsylvania law in all other respects, the arbitration clause provided that arbitration was to be conducted in accordance with the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*

Article 2 of the contract allowed Matson to direct a change in the Plans and Specification of the work to be performed. If Matson and Sun Ship were unable to reach agreement as to the effect of the change on the contract price and the contract redelivery date, Matson was to make progress payments to Sun Ship according to Sun Ship's own estimate, with the issue ultimately "resolved by arbitration under Article 23." Article 12(i)(ii) stated:

> If an increase or decrease in the contract price due to a change is not finally agreed upon or determined by arbitration prior to redelivery of the vessel, appropriate adjustment of any overpayments or underpayments shall be made after redelivery of the vessel promptly upon ... determination by arbitration of the increase or decrease.

The arbitration here concerned three contract change orders issued by Matson. As to the first, Contract Change Number (CCN) 4, there is no dispute that Matson overpaid Sun Ship $14,892.

The next change order at issue, CCN 13, directed Sun Ship to blast and coat four ballast tanks on the Lurline. Matson, however, claimed that this was work Sun Ship should have done pursuant to the original contract. Matson, therefore, took the position from the outset that CCN 13 should have had no effect on the contract price or contract redelivery date. To avoid delaying progress on the work, Matson issued a contract change order and made progress payments based on Sun Ship's estimates. The arbitration panel determined that Sun Ship did not have a pre-existing contractual duty to perform the work required in CCN 13. Although the arbitrators decided that Matson did have to pay for CCN 13, they held that Matson, by its advance payments, overpaid Sun Ship $71,475 for that contract change.

Because of its position that Sun Ship's work pursuant to CCN 13 was incompetent, Matson issued a third change order, CCN 14, to require Sun Ship to recoat and reblast the tanks. As with CCN 13, Matson made progress payments based on Sun Ship's estimate and deferred determination of who should bear the cost of recoating

---

1. Matson has cross-petitioned to confirm the arbitrators' award.

and reblasting until arbitration. The arbitrators decided that CCN 14 should have effected no change in the contract price or contract redelivery date, thus apparently accepting Matson's argument that Sun Ship did not perform the work properly the first time. The arbitrators ordered Sun Ship to repay Matson the entire $1,707,790 Matson had paid pursuant to Sun Ship's estimate. The panel also ordered Sun Ship to pay Matson $1,450,000 in liquidated damages due to 145 days of inexcusable delay in the redelivery of the vessel. With respect to CCN 14, Sun Ship argues that Matson, by executing a contract change order, waived any argument about Sun Ship's preexisting contractual duty to perform the work, and that in an arbitration proceeding pursuant to Article 2 of the contract the arbitrators did not have authority to decide whether Matson was liable for the contract change. With respect to CCN 4, CCN 13 and CCN 14, and to liquidated damages, Sun Ship claims that the arbitrators erred in awarding interest to Matson at the prime rate rather than at the statutory rate prescribed by 41 P.S. § 202. Sun Ship also complains that the arbitrators erred in awarding interest from the time of Matson's overpayment of progress payments rather than from the time of the arbitrators' decision.

I. *Arbitrability of Liability For CCN 14*

■ To determine whether an issue is arbitrable, the Court may look both to the original contract between the parties and to the parties' submission to the arbitration panel. *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Independent Truck Drivers Union, Local No. 1,* 611 F.2d 580, 584 (5th Cir.1980). In this case, both of those sources show that liability for the work ordered in CCN 14 was an arbitrable issue. Article 23 of the contract made arbitrable "any dispute or difference as to any matter or thing ... arising out of or relating to the Contract...." This provision would have certainly allowed arbitration of liability for recoating and reblasting in the absence of a contract change order. The arbitration clause was also worded broadly

enough to give the arbitration panel the authority to decide whether the contract allowed Matson to execute a contract change order while reserving the question of liability for the work ordered. Although because of the parties' request the arbitrators did not issue a written decision, this was an issue the arbitrators resolved against Sun Ship by their award.

Sun Ship argues that because this was an arbitration about change orders pursuant to Article 2 of the contract, the arbitrators could only consider the effect of the change on the cost and redelivery date in the agreement. This argument, however, is without merit. Article 2 of the contract does not provide that execution of a change order waives any question of liability, nor does Article 2 establish an arbitration proceeding different from the proceeding described in the broad arbitration clause of Article 23. In fact, Article 2 provides that if the parties cannot agree on the effect of a change, then the issue "shall be resolved by arbitration under Article 23."

Although the contract itself makes clear that the arbitrators had the power to resolve the question of liability for CCN 14, examination of the submission to the arbitrators of the issues to be resolved requires the same conclusion. The parties jointly submitted a series of questions to the arbitrators. Question 3(a) asked the panel to determine:

> Without reference to any payment that has already been made by Matson for CCN 14, what adjustment, *if any*, should be made to the contract price on account of CCN–14? (emphasis added).

Had Sun Ship not intended the arbitrators to decide the question of liability, there would have been no reason for the addition of the phrase "if any." In fact, counsel for both parties wrote the arbitration panel a joint cover letter at the time the questions were submitted which stated that the parties "were unable to reach agreement on either the form or appropriateness" of other questions. Each party reserved the

right to identify other questions it thought the panel should consider.

Even more persuasive is the transcript of a preliminary session before the arbitration panel on March 17, 1983. At that hearing, counsel for Sun Ship told the panel:

> On behalf of Sun Ship we expressly withdraw any objection to the power or jurisdiction of the panel to consider all of the issues set forth in the four issue letters.

The first of the four issue letters, written by Matson to Sun Ship on June 2, 1982 posed the following issues:

> 3(a) Does the reblasting and recoating of double bottom tank No. 1 OB and the pre-existing forward portion of double bottom tank No. 3 OB, which work was directed by contract change No. 14, constitute work to be performed by the Shipbuilder, at Shipbuilder's risk and expense, under the Reconstruction Contract?
>
> (b) If not, is the Shipbuilder otherwise responsible for the cost of reblasting and recoating double bottom tank no. 1 OB and the pre-existing forward portion of double bottom tank no. 3 OB, as directed by Contract Change No. 14?

■ At another point in the March 17 proceeding, counsel for Sun Ship stated, "it is agreed between the parties that the panel is empowered to enter an award for damages against either party in these proceedings, in accordance with the panel's resolution of the liability and damage issues as they develop in the case." Sun Ship has waived any complaint that liability for work performed pursuant to CCN 14 was not an arbitrable dispute.[2]

**2.** Sun Ship's counsel argues that defendant has taken his comment at the June 2, 1982 conference out of context. He has submitted an affidavit to show that his statement referred to an off the record discussion concerning the power of the arbitrators to hear disputes relating to a second set of issue letters. Counsel's record statement, however, is very clear and, in the absence of ambiguity, I find that Sun Ship's intentions are accurately reflected in the record of the March 17, 1983 hearing. Sun Ship cites *Local 719, American Bakery and Confectionery*

## II. *The Interest Award.*

Sun Ship has several challenges to the arbitrators' award of interest to Matson.

First, Sun Ship complains about the rate of interest applied to the overpayments and the liquidated damages. The arbitration panel stated that the applicable rate should be:

> The fluctuating base rate charged by the Chase Manhattan Bank, N.A. for 90-day loans to substantial and responsible commercial borrowers as such base rate shall change from time to time, each change in such rate to become effective on the effective date of each change in such base rate as announced by such bank. Simple interest. (i.e., the prime rate without any additions).

Sun Ship argues that the panel should have applied the statutory rate for prejudgment interest. 41 P.S. § 202 provides:

> Reference in any law or document enacted or executed heretofore or hereafter to "legal rate of interest" and reference in any document to an obligation to pay a sum of money "with interest" without specification of the applicable rate shall be construed to refer to the rate of interest of six per cent per annum.

■ The scope of review of commercial arbitration decisions is limited. In *Ludwig Honold Manufacturing Co. v. Fletcher*, 405 F.2d 1123 (3d Cir.1969), the Court noted that "a mere error in the law or failure on the part of the arbitrators will not justify judicial intervention." 405 F.2d at 1127. In *Swift Industries, Inc. v. Botany Industries, Inc.*, 466 F.2d 1125 (3d Cir.1972), the Court stated that it would overrule a commercial arbitration decision only if the deci-

*Workers of America, AFL–CIO v. The National Biscuit Company*, 378 F.2d 918 (3d Cir.1977), for the proposition that "any claim that the parties intended to exclude the courts from consideration of arbitrability must be borne by a clear demonstration of that purpose." 378 F.2d at 921. Such a demonstration has been made in this case. In *Bakery Workers* the union made it clear from the outset that, although it was proceeding with the arbitration, it was reserving its position that the dispute was not arbitrable.

sion (1) does not draw its essence from the contract; (2) is in manifest disregard of the law; or (3) does not meet the test of fundamental rationality.

■ The Supreme Court of Pennsylvania has approved the Restatement, Contracts, § 337, which provides:

If the parties have not by contract determined otherwise, simple interest at the statutory legal rate is recoverable as damages for breach of contract as follows: (a) Where the defendant commits a breach of a contract to pay a definite sum of money, or to render a performance the value of which in money is stated in the contract or is ascertainable by mathematical calculation from a standard fixed in the contract or from established market prices of the subject matter, interest is allowed on the amount of the debt or money value from the time performance was due, after making all the deductions to which the defendant may be entitled.

*Penneys v. Pennsylvania Railroad Co.,* 408 Pa. 276, 279, 183 A.2d 544, (1962).

Sun Ship argues that it should pay interest to Matson at the statutory rate for Matson's overpayments on CCN 4, CCN 13 and CCN 14. The arbitration panel's interest award on the overpayments, however, was not in the nature of damages for a breach of contract by Sun Ship. The contract provided for arbitration in the event the parties could not agree on the effect of a contract change. It gave the arbitration panel broad discretion to formulate whatever adjustments the panel deemed equitable.

Article 12(i)(ii) of the contract provides: [i]f an increase or decrease in the Contract Price due to a change is not finally agreed upon or determined by arbitration prior to redelivery of the vessel, *appropriate adjustment* of any overpayments or underpayments shall be made after redelivery of the vessel promptly upon ... determination by arbitration. (emphasis added)

Thus, it was within the discretion of the panel to award interest at the prime rate as part of an "appropriate adjustment" of Matson's overpayments.[3]

■ Sun Ship's argument that interest on liquidated damages should have been limited to the statutory rate is a stronger one. Sun Ship does not contest the imposition of interest on liquidated damages, just the rate of that interest. The arbitrators held that the completion of work on the Lurline was inexcusably delayed by 145 days. The contract set a specific rate of damages for each day of delay. Thus, Sun Ship contends this is "a breach of a contract ... to render a performance the value of which in money is stated in the contract or is ascertainable by mathematical calculation from a standard fixed in the contract...." Restatement, Contracts, § 337.

I cannot say, however, that the arbitrators' decision to award interest on liquidated damages at the prime rate does not draw its essence from the contract, is in manifest disregard of the law, or does not meet the test of fundamental rationality. First, the statute (41 P.S. § 202) adopts a six percent interest rate only where the document contains the terms "with interest" or "legal rate of interest." The contract between Matson and Sun Ship never uses the specific words mentioned in the statute. Second, the trend in Pennsylvania has been to adopt a more flexible approach to the award of interest. In *Murray Hill Estates, Inc. v. Bastin,* 442 Pa. 405, 276 A.2d 542 (1971), the Supreme Court of Pennsylvania approved as appropriate for equity cases the Superior Court's comment that

"[t]he decided trend of courts of law and courts of equity has been to break away from hard and fast rules and charge and allow interest in accordance with principles of equity, in order to accomplish justice in each particular case ... Unless a case be found, which is a conclu-

---

**3.** The award of interest for overpayments at the prime rate seems appropriate in light of the fact that Article 12(k) of the contract provided that

interest for late payments of the contract price would be assessed at a rate two percent above the prime.

sive precedent, the safest and at the same time the fairest way for a court is to decide questions pertaining to interest according to a plan and simple consideration of justice and fair dealing."

442 Pa. at 410, 276 A.2d at 545 quoting from *McDermott v. McDermott,* 130 Pa.Super. 127, 130, 196 A. 889, 890 (1938).

In *Peterson v. Crown Financial Corp.,* 661 F.2d 287 (3d Cir.1981), the Court, applying Pennsylvania law, stated that a flexible approach to interest rates should be adopted whenever the plaintiff's complaint sounds in restitution, whether the case be brought in law or in equity.

Finally, the arbitrators' could have rationally interpreted Article 12(i)(ii) of the contract to allow them discretion to set the interest rate on liquidated damages as part of an "appropriate adjustment."

Given my narrow discretion to review the decision of the arbitration panel, I will not overturn their decision as to the proper interest rate.

■ Sun Ship's final complaint is that the panel erred in finding that interest on the overpayments ran from the dates of the overpayments of progress payments rather than from the date of the arbitrators' award. Sun Ship focuses on Article 12(i)(ii) of the contract, which provides that appropriate adjustment of overpayments should be made *"after redelivery of the vessel promptly upon ... determination by arbitration."* (emphasis added). Sun Ship complains that the panel could not award interest until the principal amount became due and owing and that the principal amount did not become due and owing until the arbitrators' award.

Article 12(i)(ii) of the contract gives the arbitrators power to make *any* appropriate adjustment of Matson's overpayments. One such adjustment would be to restore to Matson the amount its overpayments could have earned had Matson retained use of the funds. Further, the arbitrators could have reasonably determined that sums were due and owing from the date they were overpaid. Such readings draw their

essence from the contract, are not in manifest disregard of the law, and meet the test of fundamental rationality. Indeed, awarding Matson interest at the prime rate from the time the company lost use of its funds puts Matson in the position in which it would have been, except for its overpayments. Such an outcome is fundamentally fair as well as fundamentally rational. It encourages the settlement of cases on their merits and it discourages the holding of money to which one is not entitled in cases where the only sanction would be the payment of below market rates of interest.